UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OPENTV, INC., et al.,

    Plaintiffs,

v.

APPLE, INC.,

    Defendant.

Case No. 14-cv-01622-JST (KAW)

**ORDER REGARDING JOINT DISCOVERY LETTER**

Re: Dkt. No. 72

The parties in this patent case dispute the terms of the proposed protective order that will govern discovery. Having reviewed the parties' joint discovery letter, the Court finds that the relevant terms of the Patent Local Rule 2-2 Interim Protective Order shall govern where the parties have failed to agree on terms.

## I. LEGAL STANDARD

When a party from whom discovery is requested moves for a protective order, the court may "for good cause, issue an order to protect a party or person from undue burden or expense." Fed. R. Civ. P. 26(c)(1). In general, "good cause requires the moving party to show that specific prejudice or harm will result if the protective order is not issued." *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, C-11-05973 PSG, 2012 WL 1232105, at *2 (N.D. Cal. Apr. 12, 2012). In patent cases, "[t]he Protective Order authorized by the Northern District of California shall govern unless the Court enters a different protective order." Patent L.R. 2-2.

## II. DISCUSSION

### A. In-house counsel access to attorneys' eyes only materials

The model protective order grants in-house counsel, if properly nominated as "Designated House Counsel," access to materials designated "Highly Confidential - Attorneys' Eyes Only."

Model Protective Order ¶¶ 7.3(a)(1), 7.4(a)(1). In-house counsel may be so nominated if counsel is not engaged in competitive decision-making. *Id.*

The parties agree that three in-house counsel for each party should have access to certain information disclosed under the proposed protective order. (Joint Ltr. at 2, 3.) They dispute whether that should include materials designated "Highly Confidential – Attorneys' Eyes Only." OpenTV advances the position that disclosure to in-house counsel is appropriate so long as counsel is not engaged in competitive decision-making. (*Id.* at 2.) Apple proposes that in-house attorneys should have access to materials designated "Highly Confidential – Attorneys' Eyes Only" only if the materials consist of financial or sales information. *(Id.)* It argues that given the nature of the information at issue, i.e., Apple's most sensitive technical and internal business information, "the risk of disclosure outweighs any need for access." *(Id.)*

In deciding whether disclosure of trade secret information is appropriate, the Court must balance the risk of inadvertent disclosure of Apple's trade secrets against the risk that protecting those trade secrets from disclosure will impair OpenTV's ability to prosecute its claims. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). This inquiry is necessarily informed by in-house counsel's specific role, including his or her duties and responsibilities, as only with such information may the Court properly determine whether allowing in-house access to trade secret information would place counsel in the untenable position of having to refuse his employer legal advice or reveal the competitor's trade secret information. *See id.* at 1471.

Absent these details, Apple cannot make the requisite showing. Accordingly, the terms of the model protective order shall govern disclosure of materials designated "Highly Confidential – Attorneys' Eyes Only."

**B.     Limits on printing source code and the number of copies of source code**

1.     Limits on printing source code

The model protective order allows a receiving party to "request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial." Model Protective Order ¶

9(d). A party cannot request printed source code for the purposes of review. *Id.*

OpenTV proposes that the terms of the model protective order govern the printing of source code. (Joint Ltr. at 4.) It argues that the order "already limits a Receiving Party to printing source code only 'when necessary.'" *(Id.)* OpenTV describes this as "an appropriate and reasonable restriction." *(Id.)* In addition, OpenTV points out that "Apple has not yet produced any source code or explained how its proposed restrictions bear any relationship to the total amount of source code that it expects to produce." *(Id.)*

Apple, however, contends that the printing of source code should be limited to 250 total pages, with no more than 25 continuous pages of any particular block of source code. (Joint Ltr. at 5.) It asserts that these limits are necessary to prevent "potentially devastating and irreparable competitive harm" and to preserve the confidentiality of its source code, which ensures that Apple's products are secure from hacking and viruses. *(Id.)* It also argues that declining to adopt the proposed limitations would invite "countless disputes as to the number of pages of Source Code that can be printed." *(Id.)*

As OpenTV notes, Apple has not yet produced any source code in this case. At this stage, then, any presumptive limits are unnecessary given the existing language in the model protective order. The Court disagrees that the language in the model protective order, which parties routinely adopt, will invite "countless disputes" on the issue of source code printing. The model protective order limits the printing of source to that which is reasonably necessary, and both the model protective order and the parties' proposed protective order outline the procedure the parties are to follow in the event there is a dispute on the issue. Model Protective Order ¶¶ 6, 9(d); Proposed Order ¶ 11(c)(v). Either variant requires that the parties meet and confer to resolve disputes, which should facilitate the resolution of any disputes the parties anticipate in this case. *See id.* ¶ 6; Proposed Order ¶ 11(c)(v).

Accordingly, Apple has failed to show good cause to impose its proposed limitations on the printing of source code. The parties may print portions of source code, as is reasonably necessary, consistent with Paragraph 9(d) of the model protective order.

### 2. Limits on the number of copies of source code

The model protective order provides that "[t]he Receiving Party shall only make additional paper copies [of any printed portions of source code] if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case." *Id.* ¶ 9(e).

Again, the parties seek to depart from the terms of the model protective order. Apple suggests that a limit of three copies of printed source code is sufficient. (Joint Ltr. at 5.) OpenTV disagrees. (*Id.* at 5.) It proposes that the parties be permitted to maintain seven copies of any printed source code. (*Id.* at 4.) It explains that its litigation team includes attorneys working in three offices, so Apple's proposal would only permit each office to maintain a copy, with no copies available to any outside expert witnesses. *(Id.)* Apple argues that the risk that its source code "will be disseminated increases exponentially with each copy that is made." *(Id.)*

Here, neither party has shown good cause for imposing either proposed limit on the number of copies of source code that may be maintained. For this reason, the number of copies of source code shall be limited to those that are "necessary," consistent with Paragraph 9(e) of the model protective order.

### C.   Restrictions on copies of source code at depositions

As stated above, the model protective order provides that "[t]he Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case." Model Protective Order ¶ 9(d).

OpenTV proposes that during a deposition, Apple should provide both a printed copy of source code and an electronic copy of source code. *(Id.)* It asserts that its proposal "would allow the attorney to have both forms available at a deposition in order to question a witness as she sees fit." (Joint Ltr. at 7.) Apple argues that both formats are not necessary, as the proposed protective order contains generous provisions for review of source code. (*Id.* at 7-8.) It suggests that OpenTV should elect, in advance of a deposition, whether it will use source code in electronic

4

1  format or in print format. (*Id.* at 8.)

2  Neither party has shown why its respective proposal warrants a departure from the terms of
3  the model protective order. OpenTV prefers that source code be available in both printed and
4  electronic format, but it concedes that "[p]rinted source code has Bates numbers and allows the
5  examining attorney to clearly refer to specific portions of the code and create a clear record as to
6  the witness's testimony." (Joint Ltr. at 7.)

7  Accordingly, source code shall be available, in printed form, for use at depositions as
8  necessary, consistent with the relevant provisions of the model protective order.

### III.   CONCLUSION

For the reasons set forth above, the model protective order shall govern where the parties have failed to agree on the terms of the stipulated protective order to be entered in this case. The parties are to file a proposed stipulated protective order that is consistent with this order.

**IT IS SO ORDERED**.

Dated: 10/09/2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge