George A. Riley (S.B. #118304) griley@omm.com
Luann L. Simmons (S.B. #203526) lsimmons@omm.com
Melody Drummond Hansen (S.B. #278786) mdrummondhansen@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701

Ryan K. Yagura (S.B. #197619) ryagura@omm.com
Xin-Yi Zhou (S.B. #251969) vzhou@omm.com
Brian M. Cook (S.B. #266181) bcook@omm.com
Kevin Murray (S.B. #275186) kmurray2@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:    (213) 430-6000
Facsimile:    (213) 430-6407

*Attorneys for Defendant*
*APPLE INC.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| OpenTV, Inc., and Nagravision, SA, | Case No. 3:14-cv-01622-JST |
| Plaintiffs and Counterdefendants, | **APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6) OR 12(c)** |
| v. | |
| Apple Inc., | |
| Defendant and Counterplaintiff. | Date:        February 19, 2015 |
| | Time:        2:00 p.m. |
| | Judge:       Honorable Jon S. Tigar |
| | Courtroom:   9, 19th Floor |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................... 1

RELIEF SOUGHT ................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 3

III.    ARGUMENT .............................................................................................................. 4

    A.  The '799 Patent Claims Ineligible Subject Matter And Is Invalid As A
    Matter of Law ............................................................................................... 4

        1.  Legal Standard ................................................................................. 4

        2.  Overview of the '799 Patent ............................................................ 5

        3.  The '799 Patent Fails Step 1 of the Alice Test: The Asserted Claims
        Are Directed To An Abstract Idea ................................................... 8

        4.  The '799 Patent Fails Step 2 of the Alice Test: Claims 1-12 Fail To
        Recite An "Inventive Concept" ..................................................... 13

            a.  Method Claims 3-12 Are Not Tied To Any Machine Or
            Structure And Do Not Contain An "Inventive Concept" .............. 13

            b.  Apparatus Claims 1-2 Rely On Conventional Technology
            And Thus Also Lack An "Inventive Concept" ............................. 15

    B.  Plaintiffs Fail to Plausibly State a Claim for Willful Infringement ..................... 17

        1.  Plaintiffs Fail to Plausibly Allege Pre-Suit Knowledge of the
        Asserted Patents ............................................................................ 18

        2.  Plaintiffs Cannot Rely on the Complaints and Apple's Post-Filing
        Conduct .......................................................................................... 19

        3.  Plaintiffs' Cursory Allegations of Apple's Accused Acts of Willful
        Infringement Also Fail ................................................................... 20

IV.    CONCLUSION ......................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accenture Global Serv. v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)..................................................................................... 17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ........................................................................................... passim

*Amdocs Ltd. v. Openet Telecom, Inc.*,
  Case No. 1:10cv910 (LMB/TRJ), 2014 WL 5430956 (E.D. Va. Oct. 24, 2014) ................ 5, 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 4, 17

*AT&T Corp. v. Excel Communs.*, Inc.,
  172 F.3d 1352 (Fed. Cir. 1999) ....................................................................................... 1

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*,
  No. C 11-04049 JW, 2012 WL 1030031 (N.D. Cal. Mar. 22, 2012)...................................... 18

*Bancorp Servs., LLC v. Sun Life Assurance. Co.*,
  687 F.3d 1266 (Fed. Cir. 2012) ............................................................................. 14, 16

*Bascom Research LLC v. Facebook, Inc.*,
  Case No. 12-6293-SI, 2013 WL 968210 (N.D. Cal. Mar. 12, 2013) ...................................... 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 17, 18, 21

*Bilski v. Kappos*,
  561 U.S. 593 (2010) (Breyer, J. concurring)..................................................................... 1, 13

*buySAFE, Inc. v. Google Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014)........................................................................... 4, 5, 16

*Cogent Med., Inc. v. Elsevier Inc.*,
  Case No. C-13-4479-RMW, C-13-4483, C-13-4489, 5:13-cv-04486, 2014 WL
  4966326 (N.D. Cal. Sept. 30, 2014)....................................................................... passim

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*,
  558 F. Appx 988 (Fed. Cir. 2014)....................................................................... 9, 10

*CyberSource Corp. v. Retail Decisions, Inc.*
  654 F.3d 1366 (Fed. Cir. 2011)........................................................................... 10, 14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*DealerTrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012).................................................................................. 14

*Diamond v. Diehr*,
   101 S. Ct. 1048 (1981) ............................................................................................... 4

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc*,
   758 F.3d 1344 (Fed. Cir. 2014).......................................................................... 10, 14

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) (Kennedy, J. concurring) .......................................................... 1

*Eclipse IP LLC v. McKinley Equip. Corp.*,
   Case No. SACV 14-742-GW(AJWx), 2014 WL 4407592 (C.D. Cal. Sept. 4,
   2014) ...................................................................................................................... 5, 6

*Fuzzysharp Techs. Inc. v. NVIDIA Corp.*,
   No. 12-cv-06375-JST, 2013 WL 2249707 (N.D. Cal. Apr. 18, 2013) ............... 17, 18, 19, 20

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*,
   Case No. 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014)................. 5

*I/P Engine, Inc. v. AOL Inc.*,
   2014 WL 3973501 (Fed. Cir. Aug. 15, 2014) (Mayer, J., concurring)...................... 5

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed.Cir.2010)................................................................................... 18

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008)................................................................................... 5

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007).......................................................................... 18, 20

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   Case No. 2:13-CV-655, 2014 U.S. Dist. LEXIS 122244 (E.D. Tex. Sept. 2,
   2014) .................................................................................................................. 5, 9, 11

*Mayo Collaborative Serv. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ...................................................................................... 4, 6, 16

*McColm v. Restoration Group, Inc.*,
   Case No. CIV-S-06-2707 MCE-EFB-PS, 2014 WL 1470106 (E.D. Cal. May
   18, 2007) .................................................................................................................... 1

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*McRO, Inc. v. Namco Bandai Games America, Inc.*,
    Case No. 2:12-cv-10322-GW-FFM, Dkt. No. 365 (C.D. Cal. Sept. 22, 2014) ........................ 5

*Open Text S.A. v. Alfresco Software Ltd.*, Case No. 13-cv-04843-JD, 2014 WL
    4684429 (N.D. Cal. Sept. 19, 2014) ..................................................................... 5, 9

*Planet Bingo, LLC v. VKGS LLC*,
    576 Fed. Appx. 1005, 1007 (Fed. Cir. 2014) ......................................................... 11

*Radware, Ltd. v. A10 Networks, Inc.*,
    No. C-13-02021-RMW, 2013 WL 5373305 (N.D. Cal. Sep. 24, 2013) ............................ 19, 20

*State St. Bank & Trust Co. v. Signature Fin. Group*, Inc.,
    149 F.3d 1368 (Fed. Cir. 1998) ......................................................................... 1

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
    Case No. 1:13-cv-01771, 2014 WL 4382446 (D. Del. Sept. 3, 2014) ....................................... 5

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    No. 11-cv-06638 RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012) .............................. passim

*Wolf v. Capstone Photography, Inc.*,
    Case No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28,
    2014) ................................................................................................. 5

**STATUTES**

35 U.S.C. § 101 .................................................................................. passim

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 5

Fed. R. Civ. P. 12(c) .............................................................................. 1, 5

Fed. R. Civ. P. 12(h)(2) ............................................................................. 1

**NOTICE OF MOTION**

Defendant and Counterplaintiff Apple Inc. ("Apple") gives notice that on February 19, 2015, at 2:00 p.m., in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Apple will and hereby does move under Federal Rule of Civil Procedure 12(b)(6) and/or 12(c) to dismiss the Third Amended Complaint filed by OpenTV, Inc. and Nagravision, SA ("Plaintiffs") with respect to all claims of patent infringement Fin of U.S. Patent No. 5,689,799 (the "'799 patent") and all claims of willful patent infringement.

**RELIEF SOUGHT**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and/or 12(c), Apple moves to dismiss Plaintiffs' claims that Apple infringes the '799 patent and Plaintiffs' claims that Apple willfully infringes any patent asserted in the Third Amended Complaint (ECF No. 92) for failure to state a claim upon which relief can be granted.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

**The '799 Patent**

The '799 patent issued in an era when the U.S. Patent and Trademark Office ("PTO") examined patents under the broad principle that "anything under the sun that is made by man" may be patented. *State St. Bank & Trust Co. v. Signature Fin. Group*, Inc., 149 F.3d 1368, 1373 (Fed. Cir. 1998); *AT&T Corp. v. Excel Communs.*, Inc. 172 F.3d 1352, 1355 (Fed. Cir. 1999). This overinclusive standard of patent eligibility opened the door to a flood of broad business method patents that have wreaked havoc in the electronic commerce industry. *See, e.g., Bilski v. Kappos*, 561 U.S. 593, 659 (2010) (Breyer, J. concurring) (improper patent eligibility standard has led to "the granting of patents that 'ranged from the somewhat ridiculous to the truly absurd'"); *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 397 (2006) (Kennedy, J. concurring)

---

[1] Apple is filing an answer to Plaintiff's Third Amended Complaint concurrently with this motion. Because Rule 12(h)(2) preserves the defense of failure to state a claim through the time of trial, Apple's motion may be adjudicated under Rule 12(b)(6) if it is docketed before Apple's answer, or under Rule 12(c) if it is docketed after Apple's answer. *See, e.g., McColm v. Restoration Group, Inc.*, Case No. CIV-S-06-2707 MCE-EFB-PS, 2007 WL 1470106, *3 (E.D. Cal. May 18, 2007) (addressing post-answer Rule 12(b)(6) motion under Rule 12(c)).

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

1    (noting the "potential vagueness and suspect validity" of business method patents).  The '799

2    patent is a prime example of a business method patent that should have never been granted.

3         Over the past few years, the Supreme Court has issued a number of decisions clarifying

4    the scope of subject matter eligible for patent protection.  Specifically, the Supreme Court

5    explained that a patent claim is invalid under § 101 of the Patent Act if the claim (1) encompasses

6    an abstract concept and (2) fails to provide an "inventive concept."  Applying the Supreme

7    Court's patent eligibility standard, the Federal Circuit and many district courts have invalidated a

8    range of business method patents that attempt to lay claim to abstract ideas or simply place

9    abstract ideas in known technological environments.

10        Under the proper standard for patent eligibility, the asserted claims of the '799 patent are

11   invalid as a matter of law.  These claims fail to include any actual innovation, but instead attempt

12   to capture the abstract idea of using code names, called "identifiers," to identify information

13   relating to buyers and vendors in a business transaction.  This idea of using code names to

14   identify information is a fundamental business practice and constitutes an abstract idea that is

15   ineligible for patent protection.  The asserted method claims of the '799 patent—claims 3-12—

16   recite steps of "storing," "associating," "receiving," and "transmitting" information for carrying

17   out this abstract idea, without tying those steps to any specific hardware or application.  The

18   asserted system claims of the '799 patent—claims 1 and 2—recite generic, structureless

19   "components" that similarly attempt to claim this abstract idea without being limited to any

20   particular structure.  Each asserted claim of the '799 patent fails the test for patent eligibility and

21   is therefore invalid as a matter of law.  Because the '799 patent claims subject matter ineligible

22   for patent protection, Plaintiffs have failed to state a valid claim based on the '799 patent and all

23   allegations relating to this patent should be dismissed.

24   **Plaintiffs' Willful Infringement Claims**

25        Plaintiffs fail to plausibly state a claim for willful infringement for any asserted patent.

26   For all asserted patents, Plaintiffs fail to allege specific facts showing that Apple acted despite an

27   objectively high likelihood that its acts constituted infringement of any valid patent.  Instead,

28   Plaintiffs merely recite the claim element "on information and belief."  Plaintiffs also do not

2

plausibly allege Apple's pre-suit knowledge of at least four of the five asserted patents, relying only on their assertion that Apple "would be aware" of the Kudelski Group's allegedly "prominent" patent portfolio.  And Plaintiffs impermissibly attempt to rely on Apple's post-filing conduct to support their willful infringement claims.  Plaintiffs' willful infringement claims therefore should be dismissed.

## II.     FACTUAL BACKGROUND

Plaintiffs filed a Complaint for Patent Infringement on April 9, 2014, alleging infringement of U.S. Patent Nos. 5,566,287 ("the '287 patent"), 5,689,799 ("the '799 patent"), 5,884,033 ("the '033 patent"), 6,985,586 ("the '586 patent"), and 7,900,229 ("the '229 patent") (collectively, the "Asserted Patents").  ECF No. 1.  Plaintiffs filed amended complaints on April 10, 2014 ("First Amended Complaint") and August 28, 2014 ("Second Amended Complaint"), neither of which alleged willful infringement.  ECF Nos. 8 and 60.

On December 16, 2014, Plaintiffs filed a Third Amended Complaint.  ECF No. 92.  In their Third Amended Complaint, Plaintiffs maintain their claims for infringement of each of the five Asserted patents and add willful infringement claims.  In support of their willfulness claims, Plaintiffs allege Apple had knowledge of each asserted patent "since at least, and through, the filing and service of the original, First Amended, Second Amended, and Third Amended Complaints."  *See, e.g., Id.* at ¶¶ 58, 68, 77, 86, 96; *see also* ¶¶ 61, 70, 79, 89, and 99.   Plaintiffs also allege Apple "***would be aware*** of a prominent portfolio such as that of the Kudelski Group, which includes OpenTV and Nagravision" and that Apple "***would be aware*** of the Kudelski Group's portfolio at least by virtue of the Kudelski Group's role in the market and the impact of the Kudelski Group's portfolio on Apple's products."  *Id.* (emphasis added).  For the '033 patent only, Plaintiffs also allege pre-suit knowledge based on citation of the '033 patent during prosecution of two Apple patents.  *Id.* at ¶ 68.  For all asserted patents, Plaintiffs allege "on information and belief, Apple continued its infringing activities despite an objectively high likelihood that its activities constituted infringement of a valid patent."  *E.g., Id.* at ¶¶ 58, 68, 77, 86, and 96.

III.   **ARGUMENT**

    A.   **The '799 Patent Claims Ineligible Subject Matter And Is Invalid As A Matter of Law.**

        1.   **Legal Standard**

A complaint that fails to plead sufficient facts to "state a claim to relief that is plausible on its face" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint asserting a patent claiming ineligible subject matter fails to state a plausible claim, and may be dismissed on the pleadings. *See buySAFE, Inc. v. Google Inc*., 765 F.3d 1350, 1355 (Fed. Cir. 2014).

The scope of patent eligibility under 35 U.S.C. § 101 is not unlimited; there are three well-established exceptions to patentability: (1) laws of nature, (2) natural phenomena, and (3) abstract ideas. *Mayo Collaborative Serv. v. Prometheus Labs., Inc*., 132 S. Ct. 1289, 1293 (2012) (citing *Diamond v. Diehr,* 101 S. Ct. 1048 (1981)). As the Supreme Court explained, monopolization of these basic tools of scientific and technical work "tend[s] to impede innovation more than it would tend to promote it," and therefore goes against the basic goal of patent law. *Id.*

In its 2012 *Mayo* decision, the Supreme Court provided a framework for distinguishing patents claiming ineligible subject matters from those claiming inventive applications of those subject matters. *See id.* A claim is not eligible for patent protection unless it adds "significantly more" to a law of nature, natural phenomenon, or abstract idea. *See id.* at 1297. A claim directed to an abstract idea does not become patent-eligible by limiting its scope to "a particular technological environment" or reciting "insignificant post-solution activity" or "well understood, routine, conventional activity." *Id.* at 1297-98. Rather, it must add an "inventive concept" to the abstract idea to ensure that the claim deserves patent protection. *Id.* at 1296.

In June 2014, the Supreme Court further clarified the *Mayo* framework by defining a two-step test used for determining whether a claim is patent-eligible: (1) determine if the claim is directed to one of the three patent-ineligible exceptions; and (2) if so, determine if the claim elements provide an "inventive concept" that transforms the nature of the claim into patent-eligible subject matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). A patent claim that fails both steps of the *Alice* test is invalid. *See id.*

Patentability under § 101 is a "threshold inquiry" and a question of law.  *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008).  District courts routinely resolve patent-eligibility questions early in the litigation through motions brought under Rule 12(b)(6) or 12(c).  *See, e.g., Open Text S.A. v. Alfresco Software Ltd*., Case No. 13-cv-04843-JD, 2014 WL 4684429, *3-5 (N.D. Cal. Sept. 19, 2014) (invalidating patents under § 101 by granting Rule 12(b)6 motion to dismiss); *McRO, Inc. v. Namco Bandai Games America, Inc*., Case No. 2:12-cv-10322-GW-FFM, Dkt. No. 365, at *23 (C.D. Cal. Sept. 22, 2014) (invalidating patent under § 101 by granting Rule 12(c) motion for judgment on the pleadings ).[2]  The Central District of California explained the significant benefits of addressing patent eligibility early in the litigation:

> From a practical perspective, there are clear advantages to addressing section 101's requirements at the outset of litigation.  Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation.

*Eclipse IP LLC v. McKinley Equip. Corp*., Case No. SACV 14-742-GW(AJWx) 2014 WL 4407592 , *6 (C.D. Cal. Sept. 4, 2014) (citing *I/P Engine, Inc. v. AOL Inc.*, 2014 WL 3973501, *12 (Fed. Cir. Aug. 15, 2014) (Mayer, J., concurring)).

The asserted claims of the '799 patent fail both steps of the *Alice* test and are therefore invalid as a matter of law.

## 2.      Overview of the '799 Patent

The '799 patent issued in November 1997—long before the Supreme Court introduced a "significant change or clarification" of the patent eligibility standard through *Mayo* and *Alice*.

---

[2] *See also, buySAFE, Inc.*, 765 F.3d at 1355 (affirming grant of motion for judgment on the pleadings based on § 101); *Eclipse IP LLC v. McKinley Equip. Corp*., Case No. SACV 14-742-GW(AJWx), 2014 WL 4407592, *12 (C.D. Cal. Sept. 4, 2014) (granting motion to dismiss for failure to state a claim based on § 101); *Cogent Med., Inc., v. Elsevier Inc.*, Case No. C-13-4479-RMW, C-13-4483, C-13-4489, 5:13-cv-04486, 2014 WL 4966326, *6 (N.D. Cal. Sept. 30, 2014) (same); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, Case No. 12-1736-LPS-CJB, 2014 WL 4379587, *14 (D. Del. Sept. 3, 2014) (same); *Tuxis Techs., LLC v. Amazon.com, Inc*., Case No. 1:13-cv-01771, 2014 WL 4382446, *6 (D. Del. Sept. 3, 2014) (same); *Wolf v. Capstone Photography, Inc*., Case No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527, *45 (C.D. Cal. Oct. 28, 2014) (granting motion for judgment on the pleadings based on § 101); *Amdocs Ltd. v. Openet Telecom, Inc.*, Case No. 1:10cv910 (LMB/TRJ), 2014 WL 5430956 (E.D. Va. Oct. 24, 2014) (same); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, Case No. 2:13-CV-655, 2014 U.S. Dist. LEXIS 122244, *47 (E.D. Tex. Sept. 2, 2014) (same).

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

1   *Eclipse IP LLC*, 2014 WL 4407592 at *3 n.5; *see also, Amdocs Ltd.,* 2014 WL 5430956 at *5

2   ("*Alice* represents a change, or a significant clarification, of the law …."); *Ultramercial, Inc. v.*

3   *Hulu, LLC*, 772 F.3d 709, 720 (Fed. Cir. 2014) (Mayer, J., concurring) (pre-*Mayo* and *Alice*

4   patents issued under "an insufficiently rigorous subject matter eligibility standard").

5        The '799 patent is directed to the basic idea of using code names to identify information

6   about buyers and sellers in business communications.  The '799 patent discloses a system that

7   uses an order processing computer (called a "response collector") for routing orders received

8   from buyers (called "responses") to the appropriate vendors.  *See* '799 patent 1:65-2:10.[3]  Figure

9   23 of the '799 patent, reproduced below, illustrates the disclosed system.



FIG. 23

19        The order routing system disclosed by the '799 patent uses two code names—an

20   "application identifier" and a "user identifier"—to route orders received from a buyer to the

21   appropriate vendor.  *See id.*  Each order received by the "response collector" from a buyer

22   includes an "application identifier," which identifies a piece of software associated with a vendor.

23   *See id.* 2:22-35.  Each order also includes a "user identifier" that identifies the buyer.  *See id.*

24   2:11-21.  Because a buyer's credit card number and address are stored by the "response

25   collector," the order sent by the buyer to the "response collector" need not include any

26   confidential information other than his or her "user identifier" and the product or service ordered.

27

28   ---
[3] The '799 patent is attached to Plaintiff's original complaint as Exhibit A (ECF No. 1-1 at 2-30).

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

*See id*. Upon receipt of an order, the "response collector" looks up the "confidential information" (*e.g.*, credit card number and address) associated with the "user identifier," adds that information to the order, and "then forwards the user information including user confidential information [*e.g.*, credit card number and address] and response information [*e.g.*, the order] to the vendor associated with the application identifier received." *Id*. 2:23-36.  In sum, the '799 patent is directed to the idea of using a code name, or "user identifier," to identify buyer information and using another code name, or "application identifier," to identify vendor information.

Plaintiffs allege that Apple infringes claims 1-12 of the '799 patent.  *See* ECF No. 78-3 at 3.  Claims 3-12 recite methods of organizing and communicating information comprising steps that are not tied to any hardware.  Claim 3 is illustrative:

> 3. A method of routing confidential user information to a supplier comprising:
> [a] storing an application identifier and vendor routing information;
> [b] associating the vendor routing information with the application identifier;
> [c] receiving an application identifier and user response information; and
> [d] transmitting at least a portion of the user response information received responsive to the vendor routing information associated with the application identifier received.

'799 patent claim 3.  The information routing method recited in claim 3 includes steps for "storing," "associating," "receiving," and "transmitting" information, all without specifying the hardware performing these steps.  *See id*.  The central idea claimed by claim 3 is using an "application identifier" to identify the "vendor routing information" to route certain data—the "user response information"—to a specific vendor.  *See id*.

Claim 4 of the '799 patent, which depends from claim 3, recites a method of routing "other user information" using a "user identifier," again without specifying the hardware used to perform the claimed steps.  *See id*. claim 4.  Similarly, dependent claims 5-12 recite additional method steps relating to the routing and verifying of information without specifying any hardware.  *See id*. claims 5-12.

Claims 1-2 are system claims that recite vague "component" limitations using purely functional claim language.  *See id*. claims 1-2.  Claim 1 is illustrative:

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

1. An system for routing confidential user information to a vendor comprising:

[a] a provider component for broadcasting an application identifier to at least one reception component;

[b] a reception component for storing at least one user identifier, receiving and storing the application identifier, assembling user response information, and transmitting to a response collector the application identifier received and the user response information assembled; and

[c] a response collector component for storing the application identifier and vendor routing information, associating the application identifier with the vendor routing information, receiving the application identifier and user response information from the reception component, and transmitting the user response information to the vendor associated with the application identifier received.

*Id.* claim 1.

Although drafted as a system claim, claim 1 does not actually define any structure within the claimed system. For example, claim 1 does not specify the hardware structure of a "provider component," defining it only by its intended function—*i.e.,* "for broadcasting an application identifier to at least one reception component." *See id.* Indeed, claim 1 recites various data organization and communication functions performed by three "components"—a "provider component," a "reception component," and a "response collector component"—all without specifying the actual hardware structure of those components. As with claim 3, the central idea claimed by claim 1 is using an "application identifier" to identify "vendor routing information" to route "user response information" to a specific vendor. *See id.* at claim 1. Likewise, system claim 2 corresponds to method claim 4 by requiring the "response collector" to route "other user information" using a "user identifier." *See id.* claim 2.

### 3. The '799 Patent Fails Step 1 of the *Alice* Test: The Asserted Claims Are Directed To An Abstract Idea.

Claims 1-12 of the '799 patent are directed to the abstract idea of using code names to identify information relating to buyers and sellers in business transactions. The subject matter of the '799 patent is analogous to the patent invalidated by the Supreme Court in *Alice Corp*. There, the Supreme Court held that "a method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk" is abstract and unpatentable. *Alice*

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

1   *Corp.*, 134 S. Ct. at 2356.  The '799 patent—directed to a method of routing information between

2   two parties using a third-party as the intermediary—is similarly, if not more, abstract.  *See* '799

3   patent 2:11-36.

4          As a threshold matter, "fundamental economic practice[s] long prevalent in our system of

5   commerce" are abstract ideas that cannot be patented.  *Alice Corp.*, 134 S. Ct. at 2356.  Here, the

6   '799 patent attempts to claim, and thus preempt, the fundamental business practice of using code

7   names to identify information about buyers and vendors.  Long before the '799 patent was filed,

8   department stores used charge account numbers—*i.e.*, "user identifiers"—to identify payment

9   information associated with frequent shoppers.  Correlating codes to information about parties to

10  a transaction has been used in countless other contexts, such as assigning an inventory code to a

11  manufacturer's product, using a client number for billing tasks performed by lawyers at a firm,

12  associating patient codes to medical records, and using a library call number to identify a book.

13  The United States Postal Service has been using this idea since at least 1963, when it began using

14  zip codes to identify the location of recipients in the routing of postal mail.  Sears has been using

15  this idea for well over a hundred years in its Christmas catalogues, each of which uses product

16  codes to identify information relating products being offered.  Because the "long prevalent"

17  practice of using code names to identify information is a "fundamental economic practice" and a

18  basic "building block of human ingenuity," it is an abstract idea that is not eligible for patent

19  protection.  *Alice,* 134 S. Ct. at 2354-6.[4]

20         Based on this basic idea, the claims of the '799 patent cover ways of organizing and

21  communicating information, which have been held abstract by many courts.  For example, in

22  *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, the Federal Circuit held that a patent

23  directed to using categories to "organize, store, and transmit information" claimed an abstract

---

[4] A court may rely on its "judicial experience and common sense" in adjudicating a motion to dismiss for failure to state a claim.  *Cogent Med.,* 2014 WL 4966326, at *2 (finding "maintaining and searching a library of information" to be an abstract idea based on the Court's knowledge of libraries); *see also, Open Text S.A.*, 2014 WL 4684429, at *5 (granting motion to dismiss for failure to state a claim by taking judicial notice that the claimed idea is a "commonplace and time-honored practice"); *Loyalty Conversion Sys. Corp.* , 2014 U.S. Dist. LEXIS 122244, *44 (granting motion for judgment on the pleadings by comparing the claimed idea to "the familiar business practice of converting a non-negotiable currency into a negotiable one").

idea. 558 F. Appx 988, 990-92 (Fed. Cir. 2014). The Federal Circuit noted, "the idea of collecting information in classified form, then separating and transmitting that information according to its classification is an abstract idea that is not patent-eligible." *Id*. at 992. In *Digitech Image Techs., LLC v. Electronics for Imaging, Inc*, the Federal Circuit likewise invalidated a patent claim that recited the abstract idea of "organizing information through mathematical correlations." 758 F.3d 1344, 1350 (Fed. Cir. 2014). The Federal Circuit explained that the "claim recites a process of taking two data sets and combining them into a single data set . . . The [] claim thus recites an ineligible abstract process of gathering and combining data." *Id*. at 1351. In *Cogent Medicine*, Judge Whyte in this district found claims directed at the idea of organizing information by "maintaining and searching a library of information" to be unpatentably abstract. 2014 WL 4966326, at *6.

Here, the claims of the '799 patent cover the organization and communication of data using "identifiers" to identify buyer and vendor information. *See* '799 patent claims 1-12. For example, steps [a] and [b] of claim 3 are directed to storing and associating a code name (*i.e.*, an "application identifier") with certain data relating to a vendor (*i.e.*, "vendor routing information"), which simply specifies a way of organizing information. *Id.* claim 3. Steps [c] and [d] require receiving that code name with other "user response information" and transmitting that received information accordingly, which simply specifies a way of communicating information. *See id*. Thus, claim 3 attempts to monopolize the idea of using a code name to organize and communicate information—an idea that is abstract and ineligible for patent protection. *See Cyberfone Systems,* 558 F. Appx at 990-92; *Digitech Image Techs.,* 758 F.3d at 1350; *Cogent Med.,* 2014 WL 4966326, at *6.

A common and telling feature of an abstract claim is that its limitations can be performed by a person with pen and paper, without the use of a computer. *See, e.g., CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1372 (Fed. Cir. 2011) (finding claims for using the internet to identify credit card fraud were unpatentable because the claim "can be performed in the human mind, or by a human using a pen and paper."); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005 (Fed. Cir. 2014) (finding claims abstract because they "consist[] solely of mental steps

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

which can be carried out by a human using pen and paper").  The asserted claims of the '799

patent can be performed manually without a computer, which confirms their abstract nature.  For

example, as illustrated below, each step of claim 3 can be performed manually by an owner of a

mail order business:

| Claim 3 Method Step | Step Performed Without Computer |
|---|---|
| *[a]* storing an application identifier and vendor routing information; | Alice, who runs a mail order business, writes various software vendors' contact information in a notebook, along with product code names that identify certain software products offered by each vendor. |
| *[b]* associating the vendor routing information with the application identifier; | Alice divides her notebook into two columns—one column for the vendors' contact information, and a second column for product code names of software offered by each vendor. |
| *[c]* receiving an application identifier and user response information; and | Alice receives a telephone call from customer Bob, who asks Alice to order ten copies of "Photo Store." |
| *[d]* transmitting at least a portion of the user response information received responsive to the vendor routing information associated with the application identifier received. | Alice looks up "Photo Store" in her notebook, finds that this code name corresponds to a photo editing software produced by Acme Corporation, and calls the telephone number associated with Acme Corporation to order ten copies for Bob. |

In *Loyalty Conversion Systems Corporation*, Judge Bryson of the Federal Circuit—sitting

by designation in the Eastern District of Texas—found the patents-in-suit abstract in part because

"the asserted claims … could be performed by a human being without the aid of a computer of

any kind," which demonstrates "the simplicity of the functions that the claims assign to

computers."  2014 U.S. Dist. LEXIS 122244, at *34-35.  Likewise, that claim 3 can be performed

without using a computer demonstrates the simplicity of its steps and confirms the abstract nature

of the claim.

Each asserted claim of the '799 patent is abstract.  Claim 1 attempts to cover the same

abstract idea as claim 3 in a system-claim form—it recites three structureless "components" for

organizing and communicating data, all based on the same abstract idea of using an "application

identifier" to identify the "vendor routing information" in the communication of buyer

information.  *See* '799 patent claim 1 (reciting "receiving and storing the application identifier,"

"associating the application identifier with the vendor routing information," and "transmitting the

user response information to the vendor associated with the application identifier received"). The "component" limitations of claim 1 perform basic functions relating to the organization and communication of data, including "broadcasting," "storing," "receiving," "assembling," "associating," and "transmitting" various buyer and vendor information. *See id.* Thus, claim 1 is directed to the same abstract idea as claimed by method claim 3.

Claims 2 and 4—which depend from claims 1 and 3, respectively—recite components and steps for "storing at least one user identifier and other user information" and "associating at least one user identifier with the other user information." '799 patent claims 2 and 4. In other words, claims 2 and 4 recite the abstract idea of associating a second code name (*i.e.*, a "user identifier") with certain data relating to a buyer (*i.e.*, "other user information"). *See id.* Using the same mail-order example provided above, these steps can be performed manually when Alice writes Bob's credit card number and shipping address in her notebook, and assigns Bob a customer account number.

Claims 5-12 depend from claims 3 and 4 and cover the same abstract idea. Claim 5 requires the "other user information" to be "confidential information," which specifies a general type of information being exchanged but does not alter the abstract nature of the claimed method. '799 patent claim 5. Claim 6 adds the step of "verifying" user information, which is an additional step that can be performed manually without a computer. *See* '799 patent 25:21 (explaining that verification can be accomplished by "checking the credit card billing address with the address provided by the user"). *Id.* claim 6. Claims 7-12 require certain data to be transmitted "using an unsecure facility," which limits the communications medium but does not alter the nature of the claimed method. *Id.* claims 7-12.

Claims 1-12 of the '799 patent are directed to a well-known, fundamental business practice and include only the abstract idea of organizing and communicating data. The claims, therefore, fail the first step of the *Alice* test.

**4.      The '799 Patent Fails Step 2 of the *Alice* Test: The Asserted Claims Fail To Recite An "Inventive Concept."**

Because claims 1-12 of the '799 patent attempt to cover the abstract idea of associating code names to vendor and buyer data, they are not eligible for patent protection unless they recite elements that transform the nature of the claims into patent-eligible subject matter. *See Alice Corp.*, 134 S. Ct. at 2355.  In examining whether a claim is sufficiently transformative, the Supreme Court describes "a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the [ineligible concept] itself.'" *Id.* (emphasis added).  Claims 1-12 of the '799 patent include no inventive concept and are thus invalid under 35 U.S.C. § 101.

a.      Method Claims 3-12 Are Not Tied To Any Machine Or Structure And Do Not Contain An "Inventive Concept."

Claims 3-12 of the '799 patent recite abstract steps of organizing and communicating information without adding any feature that solves a particular problem or improves a specific machine.  Thus, claims 3-12 fail to provide an "inventive concept" required by *Alice*.  *See Alice*, 134 S. Ct. at 2356-57.

Although the machine-or-transformation test is no longer a dispositive test for determining patent-eligibility of method claims, it remains a "useful and important" tool in determining whether a method claim meets the second prong of the *Alice* analysis.  *Bilski v. Kappos*, 130 S. Ct. 3218, 3227 (2010); *Ultramercial*, 772 F.3d at 716.  Under the machine-or-transformation test, a claimed method may be patent-eligible under 35 U.S.C. § 101 if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Ultramercial*, 772 F.3d at 716.  Here, the claimed methods fail both prongs—the claim elements are not tied to a machine or apparatus, and the recited steps do not transform any article.  Thus, this test confirms that claims 3-12 do nothing more than lay claim to a purely abstract idea, rather than an inventive application of that idea.  *See id.* at 716-717; *Cogent Med.,* 2014 WL 4966326, at *5 ("[T]he machine-or-transformation test confirms that the [asserted patent's] method claims do not claim patentable subject matter").

Courts have consistently found unpatentable processes that cover the simple manipulation of information without any ties to a specific application or machine.  In *Digitech*, the Federal Circuit invalidated a method claim that failed to recite any hardware because the claim "describes a process of organizing information through mathematical correlations and is ***not tied to specific structure or machine***."  758 F.3d at 1350 (emphasis added).  In *CyberSource Corp.*, the Federal Circuit found that a claim involving "[t]he mere collection and organization of data" was unpatentable because it "[did] not require the method to be performed by a particular machine, or even a machine at all."  654 F.3d at 1370.  In *DealerTrack, Inc. v. Huber*, the Federal Circuit invalidated claims covering a process for selectively forwarding data because the claims "do not require a specific application, nor are they tied to a particular machine."  674 F.3d 1315, 1330-34 (Fed. Cir. 2012).  The same analysis applies to the method claims of the '799 patent—because claims 3-12 recite steps for carrying out an abstract idea without tying the claimed method to a particular machine or specific application, they are unpatentable under 35 U.S.C. § 101.

To the extent Plaintiffs argue the recitation of an "application identifier" links the claims to software products, limiting an abstract idea to a particular product type cannot supply the necessary "inventive concept" required by *Alice*.  As the Supreme Court explained, the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.'"  *Alice Corp.,* 134 S. Ct. at 2358.  In *Alice,* the Supreme Court found the application of a well-known economic concept to a computer environment insufficient to render abstract claims patentable.  *See id*. at 2360.  Similarly, in *Bancorp Services, LLC v. Sun Life Assurance Co.,* the Federal Circuit found that "limiting an abstract idea to one field of use" does not turn an abstract idea into a patentable invention.  687 F.3d 1266, 1280 (Fed. Cir. 2012).  In *Ultramercial,* the Federal Circuit found the combination of an abstract idea with the "use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter."  772 F.3d at 716.  Here, the application of an abstract idea to business communications involving computer software products does not supply the "inventive concept" needed to transform an abstract idea into patentable subject matter.  Therefore, claims 3-12 fail both steps of the *Alice* test and are invalid as a matter of law.

b.   Apparatus Claims 1-2 Rely On Conventional Technology And Thus Also Lack An "Inventive Concept."

Claims 1 and 2 recite the same abstract ideas presented in method claims 3 and 4—*i.e.*, using code names to identify vendor and buyer information—but are drafted in a system-claim form using three generic and functional "component" limitations. '799 patent claims 1-2. The recitation of these generic "components" cannot supply the necessary inventive concept required to transform an abstract idea into a patentable invention. *See Alice,* 134 S. Ct. at 2359-60.

For example, the '799 patent admits that the broadcasting function associated with the "provider component" can be performed by "[a]ny form of broadcast, wire or cable transmitter." '799 patent 7:7-9. Indeed, the '799 patent discloses that the "provider component" can be implemented by conventional broadcast equipment found in the television, radio, telephone, and pager industries. *See, e.g.,* '799 patent 5:41-42 ("***conventional*** broadcast signal is provided by signal provider 208"); 5:53-56 ("the graphical interactive compact protocol generator and formatter 210 is a ***conventional*** 486 personal computer system"); 6:18-20 ("***conventional*** methods are employed to insert data into the VBI of a ***conventional*** broadcast from a broadcast device"); 6:38-44 ("the transmitter 214 is a ***conventional*** television broadcast transmitter which receives and broadcasts the signal from ***conventional*** VBI inserter 212"); 6:47-54 ("the transmitter 214 is a ***conventional*** cable system head-end amplifier [or] a ***conventional*** cellular telephone transmitter [or] a ***conventional*** pager transmitter"); 7:3-7 ("transmitter 214 is a ***conventional*** out-of-band transmitter [or] a ***conventional*** FM transmitter") (emphasis added).

These admissions confirm that there is nothing inventive about the "provider component." Rather, this limitation places the claimed idea in known "technological environment[s]," and provides no meaningful limitation beyond that idea. *Alice Corp.,* 134 S. Ct. at 2358. Moreover, the specification makes clear that the claimed invention is not even limited to a particular technology. By disclosing that different types of broadcasting equipment—including those from television, radio, telephone, and pager broadcast systems—can be used to perform the claimed functionality, the '799 patent confirms that the hardware elements are not integral to the claimed invention. *See Bancorp Servs.,* 687 F.3d at 1278 (finding abstract idea unpatentable because the

1   recited hardware is not "integral to the claimed invention"). Thus, the "provider component"

2   limitation fails to provide any "inventive concept," but only adds "well-understood, routine,

3   conventional activity." *Mayo*, 132 S. Ct. at 1298.

4        The '799 patent similarly describes the "reception component" as being implemented

5   using industry-standard, conventional equipment. *See, e.g.,* '799 patent 7:56-60 ("Referring now

6   to FIG. 3, one embodiment of the user reception equipment 308 is shown. **Conventional**

7   television receiver 310 such as a Sony KV32V55 is coupled to a set-top decoder 312 which is

8   coupled via cable 322 to antenna 316."); 8:1-9 ("tuner 216 is a **conventional** television broadcast

9   tuner [or] a **conventional** CATV tuner [or] a **conventional** FM tuner [or] a **conventional** cellular

10  telephone tuner [or] a **conventional** pager tuner"); 8:12-18 ("data extractor 218 is a **conventional**

11  VBI inband data extraction circuit [or] a **conventional** modem"; "Other **conventional** data

12  extraction equipment and techniques may also be used."); 8:24-27 ("microprocessor 222 is a

13  **conventional** 68040 microprocessor available commercially from Motorola, Inc."); 8:27-41

14  ("storage device 226 is a **conventional** addressable RAM memory array"); 9:8-10 ("the display

15  230 is a **conventional** television receiver"); 9:17-22 ("user input decoder 244 is a **conventional**

16  infrared remote control decoder"; "user input receiver is a **conventional** infrared receiver 250");

17  9:36-44 ("user input receiver 250 is a **conventional** personal digital assistant keypad device and

18  the user input decoder 244 is a **conventional** keypad decoder") (emphasis added). Thus, there is

19  nothing inventive about the "reception component" either.

20       Lastly, the "response collector component"—the element that performs the functions of

21  associating "application identifier" and "user identifier" to vendor and buyer information—is

22  described by the specification as "an industry standard UNIX-based computer system coupled to

23  at least a modem." '799 patent 24:67-25:3. In *buySAFE,* the Federal Circuit explained that "a

24  computer [that] receives and sends the information over a network—with no further

25  specification—is not even arguably inventive." 765 F.3d at 1355. In *Cogent Medical*, another

26  court in this district found "[t]he addition of a conventional element like a generic computer to an

27  abstract idea does not add an 'inventive feature' to the abstract idea." 2014 WL 4966326, *4-.

28  The same analysis applies to the '799 patent—the use of a modem coupled with an "industry

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

1   standard UNIX-based computer" does not come close to meeting the "inventive concept"

2   requirement.  *See Alice Corp.*, 134 S. Ct. at 2355.

3         The "component" limitations recited by claims 1 and 2 are devoid of any inventive

4   feature, and thus fail to transform the abstract functions claimed by the system claims into patent-

5   eligible subject matter.  There is nothing innovative about the "provider component," "reception

6   component," or "response collector component" because they refer to generic equipment used to

7   implement a fundamental, well-known idea.  In *Alice,* the Supreme Court invalidated claims

8   requiring a "data processing system'" with a "communications controller" and a "data storage

9   unit" because these elements are "purely functional and generic," and thus lack an inventive

10   concept.  *Alice,* 134 S. Ct. at 2360.  In *Accenture Global Services v. Guidewire Software, Inc.*, the

11   Federal Circuit found claims reciting a "data component that stores, retrieves and manipulates

12   data" and a "client component [that] transmits and receives data to/from the data component"

13   unpatentable because the recited components fail to offer any innovation beyond implementation

14   of an abstract idea using generic computer components.  728 F.3d 1336, 1338, 1341 (Fed. Cir.

15   2013).  The same analysis applies to claims 1 and 2 of the '799 patent—the generic "component"

16   terms fail to supply an inventive concept needed to transform claims 1 and 2 into a patentable

17   subject matter.

18         Therefore, each of the asserted claims fails both prongs of the *Alice* test and is invalid as a

19   matter of law under 35 U.S.C. § 101.

20         **B.**      **Plaintiffs Fail to Plausibly State a Claim for Willful Infringement.**

21         Willful infringement claims must "state a claim to relief that is plausible on its face."  *See,*

22   *e.g., Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. 11-cv-06638 RS, 2012 WL 1831543,

23   at *4 (N.D. Cal. May 18, 2012) (applying *Iqbal* and *Twombly* to willful infringement claims);

24   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

25   (2007).  *See also Fuzzysharp Techs. Inc. v. NVIDIA Corp.*, No. 12-cv-06375-JST, 2013 WL

26   2249707, at *2 (N.D. Cal. Apr. 18, 2013).  A plaintiff must plead sufficient facts to raise a

27   reasonable inference that the defendant "was aware of the asserted patent, but nonetheless acted

28   despite an objectively high likelihood that its actions constituted infringement of a valid patent."

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

1   *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed.Cir.2010); *Fuzzysharp*, 2013 WL

2   2249707, at *2. A "formulaic recitation of a cause of action's elements" is not enough.

3   *Twombly*, 550 U.S. at 555.

4          Here, Plaintiffs' willful infringement allegations (1) fail to plausibly support Apple's pre-

5   suit knowledge of at least four asserted patents, (2) improperly rely on post-filing conduct for all

6   asserted patents, and (3) include no specific facts plausibly supporting the assertion that Apple

7   acted despite an objectively high likelihood that its actions constituted infringement of a valid

8   patent. Plaintiffs' willful infringement claims therefore should be dismissed.

9                    **1.      Plaintiffs Fail to Plausibly Allege Pre-Suit Knowledge of the Asserted
                                Patents.**
10

11         A willfulness claim "must necessarily be grounded in the accused infringer's pre-filing

12   conduct." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007). A plaintiff must

13   allege facts sufficient to support pre-suit knowledge. *See, e.g.*, *Avocet Sports Tech., Inc. v.*

14   *Garmin Int'l, Inc.*, No. C 11-04049 JW, 2012 WL 1030031, at *4 (N.D. Cal. Mar. 22, 2012).

15         Plaintiffs do not plausibly allege actual pre-suit knowledge of the '287 patent, '799 patent,

16   '586 patent, or '229 patent. Plaintiffs' basis for alleging pre-suit knowledge of these patent is that

17   Apple "***would be aware*** of a prominent portfolio such as that of the Kudelski Group" and "***would***

18   ***be aware*** of the Kudelski Group's portfolio at least by virtue of the Kudelski Group's role in the

19   market and the impact of the Kudelski Group's portfolio on Apple's products." ECF No. 92 at ¶¶

20   58, 77, 86, 96 (emphasis added); *see also* ¶¶ 61, 79, 89, and 99.[5] Plaintiffs cannot rely on alleged

21   awareness of a patent portfolio to infer Apple's knowledge of the asserted patents. For example,

22   in *Vasudevan Software v. TIBCO Software*, Vasudevan alleged that because TIBCO knew of a

23   patent related to an asserted patent, TIBCO was on notice of Vasudevan's entire patent portfolio,

24   including the asserted patent. *Vasudevan*, 2012 WL 1831543, at *1. The court granted TIBCO's

25   motion to dismiss, holding that "[t]he requisite knowledge of the patent allegedly infringed

26   ───────────────

27   [5] Plaintiffs recite this allegation for the '033 patent, but add allegations that Apple also was aware of the '033 patent based on citation during prosecution of Apple patents. ECF No. 92 at ¶¶ 68 and 70. Plaintiffs' willful infringement claims for the '033 patent nevertheless fail as conclusory.

28   *See* Section B.3 *infra*.

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

1    simply cannot be inferred from mere knowledge of other patents, even if somewhat similar." *Id.*

2    at *3.  In this case, knowledge of the five asserted patents cannot reasonably be inferred from

3    alleged knowledge of a portfolio.  Indeed, the Third Amended Complaint alleges there are over

4    4,400 patents in the Kudelski Group's portfolio.  ECF No. 92 at ¶ 31.  *See also Radware, Ltd. v.*

5    *A10 Networks, Inc.*, No. C-13-02021-RMW, 2013 WL 5373305, *3 (N.D. Cal. Sep. 24, 2013)

6    (dismissing willful infringement claim, finding alleged pre-suit knowledge based on former

7    employee was "mere speculation.")

8         Similarly, Plaintiffs' general reference to prior litigation and a license with a different

9    party—Cisco Systems (ECF No. 92 at ¶¶ 58, 68, 77, 86, 96)—cannot support an allegation of

10   Apple's pre-suit knowledge of the asserted patents.  For example, in *Fuzzysharp*, a plaintiff's

11   reference to prior litigation against **the defendant** in that case did not support a reasonable

12   inference of notice of the asserted patent, where the allegation did not specify that the prior

13   litigation concerned the asserted patent.  *Fuzzysharp*, 2013 WL 2249707, at *2.  Here, not only

14   does the Third Amended Complaint fail to allege that the Cisco litigation concerned the same

15   asserted patents, it also fails to plead any facts supporting that Apple even knew about the Cisco

16   litigation.

17        Plaintiffs' assertions of Apple's pre-suit knowledge therefore fail, and Plaintiffs'

18   willfulness claims should be dismissed.

19        **2.    Plaintiffs Cannot Rely on the Complaints and Apple's Post-Filing**

20             **Conduct.**

21        Plaintiffs' Third Amended Complaint also alleges Apple's knowledge of each Asserted

22   Patent "since at least, and through, the filing and service of the original, First Amended, Second

23   Amended, and Third Amended Complaints."  *See, e.g.,* ECF No. 92 at ¶¶ 58, 68, 77, 86, 96; *see*

24   *also*  ¶¶ 61, 70, 79, 89, and 99.   And Plaintiffs state they are "continuing to investigate Apple's

25   knowledge of the Asserted Patents before the filing of the original Complaint."  *See, e.g.*, ECF

26   No. 78 at 5.

27        Plaintiffs' proposed "wait-and-see" approach has been rejected by courts in this district.

28   In ordinary circumstances, willfulness must be based on pre-litigation conduct.  *See, e.g.,*

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

*Vasudevan,* 2012 WL 1831543, at *5.  While willfulness can continue after litigation has

commenced, "a patentee must have a good faith basis for alleging willful infringement in the

original complaint."  *Id.*, citing *In re Seagate Tech*., LLC, 497 F.3d at 1374.  Otherwise, a

patentee who does not seek a preliminary injunction "should not be allowed to accrue enhanced

damages based solely on the infringer's post-filing conduct."  *Vasudevan,* 2012 WL 1831543, at

*5 (quoting *In re Seagate*).   Plaintiffs did not move for a preliminary injunction in this case, and

therefore should not be permitted to claim willful infringement based solely on post-filing

conduct.  *See, e.g.*, *Vasudevan,* 2012 WL 1831543 (dismissing claims for willful infringement).

There is no reason to deviate from the *Vasudevan* and *Seagate* reasoning  in this case.  *See also*

*Radware,* 2013 WL 5373305, at *6 (dismissing willful infringement claims to the extent based on

post-filing conduct where pre-suit knowledge insufficiently pled.)

Because Plaintiffs' allegations based on knowledge of the complaints and Apple's post-

filing conduct fail, Plaintiffs' willfulness claims should be dismissed.

### 3. Plaintiffs' Cursory Allegations of Apple's Accused Acts of Willful Infringement Also Fail.

In addition to the pre-suit knowledge requirements—which Plaintiffs have not met for

four asserted patents—Plaintiffs also must provide sufficient facts for all asserted patents to raise

a reasonable inference that Apple  acted despite an objectively high likelihood that its actions

constituted infringement of a valid patent.  *Fuzzysharp*, 2013 WL 2249707, at *2.  A "bare

recitation of the required legal elements for willful infringement is inadequate."  *Vasudevan,* 2012

WL 1831543, at *4.

Here, Plaintiffs do not plead facts connecting Apple's alleged knowledge of any asserted

patent to any allegedly willful infringing acts or otherwise supporting allegations that "on

information and belief, Apple continued its infringing activities despite an objectively high

likelihood that its activities constituted infringement of a valid patent."  *See* ECF No. 92 at ¶¶ 58,

68, 77, 86, and 96 (the '799 patent, '033 patent, '287 patent, '586 patent, and '229 patent,

respectively).  Such "formulaic recitation of a cause of action's elements" is insufficient to

support a claim.  *Twombly*, 550 U.S. at 555.  *See also, e.g., Bascom Research LLC v. Facebook,*

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

1   *Inc.,* Case No. 12-6293-SI, 2013 WL 968210, at *6 (N.D. Cal. Mar. 12, 2013) (dismissing willful

2   infringement claim where "the complaint does not allege any facts that could give rise to an

3   inference that [Defendant] knew or should have known it was acting despite an objectively high

4   likelihood of infringement").

5         Plaintiffs may not simply allege knowledge of asserted patents based on the complaint and

6   continued infringement.  *See Vasudevan,* 2012 WL 1831543, at *5 (dismissing conclusory

7   allegations that defendant's "continued infringement" is "willful and deliberate" as factually

8   insufficient).  "To permit [Plaintiffs] to proceed in this fashion would invite claims of willfulness

9   in every patent suit, as a matter of course, and regardless of the facts." *Id.* at *5.  As the

10  *Vasudevan* court noted, such a rule would not comport with reality "[g]iven the uncertainties that

11  surround patent validity, and the challenges of predicting litigation outcomes generally." *Id.*

12        Plaintiffs' willfulness claims should therefore be dismissed for this independent reason.

13  **IV.**    **CONCLUSION**

14        Apple respectfully requests that the Court dismiss Plaintiffs' claims of infringement of the

15  '799 patent and all claims of willful infringement in Plaintiffs' Third Amended Complaint.

16

17        Dated:  December 24, 2014          O'MELVENY & MYERS LLP

18

19                            By:     */s/ Luann L. Simmons*

20                            Attorneys for Defendant APPLE INC.

21

22

23

24

25

26

27

28

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST

1

## CERTIFICATE OF SERVICE

2      The undersigned certifies that on December 24, 2014, the foregoing Defendant Apple

3  Inc.'s Notice Of Motion And Motion To Dismiss Plaintiffs' Third Amended Complaint For

4  Failure To State A Claim Pursuant To Fed. R. Civ. P. 12(b)(6) Or 12(c) and all supporting

5  documents were filed and served on all counsel of record electronically using the CM/ECF

6  system in compliance with Civil Local Rule 5-1.

7

8                                        By:      */s/ Luann L. Simmons*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S MOTION TO DISMISS
3:14-CV-01622-JST