Robert F. McCauley (SBN 162056)
robert.mccauley@finnegan.com
Jacob A. Schroeder (SBN 264717)
jacob.schroeder@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA  94304-1203
Telephone:     (650) 849-6600
Facsimile:      (650) 849-6666

Gerald F. Ivey (*pro hac vice*)
Smith R. Brittingham IV (*pro hac vice*)
Elizabeth A. Niemeyer (*pro hac vice*)
John M. Williamson (*pro hac vice*)
Aliza A. George (*pro hac vice*)
Robert D. Wells (SBN 277903)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone:     (202) 408-4000
Facsimile:      (202) 408-4400

Stephen E. Kabakoff (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
3500 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA  30308-3263
Telephone:     (404) 653- 6400
Facsimile:      (404) 653-6444

*Attorneys for Plaintiffs*
*OpenTV, Inc. and Nagravision, SA*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| OPENTV, INC. and NAGRAVISION, SA,<br><br>              Plaintiffs and<br>              Counterdefendants,<br><br>          v.<br><br>APPLE, INC.,<br><br>              Defendant and<br>              Counterplaintiff. | CASE NO. 3:14-cv-01622-JST<br><br>**PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>**Date:** February 19, 2015<br>**Time:** 2:00 p.m.<br>**Judge:** Honorable Jon S. Tigar<br>**Courtroom:** 9, 19th Floor |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................1

II.     STATEMENT OF ISSUES TO BE DECIDED ................................................................2

III.    STATEMENT OF FACTS .................................................................................................2

        A.      The '799 Patent .......................................................................................................2

                1.      Wink Communications ..................................................................................3

                2.      Technology of the '799 Patent .....................................................................3

                3.      Wink's Commercial Success ........................................................................5

                4.      Asserted Claims 1-12 ...................................................................................5

        B.      OpenTV's Willfulness Allegations ........................................................................7

IV.     ARGUMENT ......................................................................................................................8

        A.      '799 Patent Claims 1-12 Recite Patent-Eligible Subject Matter...........................8

                1.      Legal Standards............................................................................................8

                2.      The '799 Patent Is Not Directed to an Abstract Idea ..................................9

                3.      Claims 1-12 Limit the Invention to a Specific Application That
                        Provides a Technological Solution to a Technological Problem ...............13

                        a.      Claims 1 and 2 recite significantly more than an abstract idea......14

                        b.      Claims 3-12 also recite significantly more than an abstract idea...15

                4.      Apple Incorrectly Groups System Claims 1-2 With Method Claims ........16

                5.      Apple's Hypothetical Is Inapposite............................................................17

                6.      Apple Fails to Consider the Claims in Their Entireties .............................18

                7.      Apple's Motion to Dismiss the '799 Patent Claims Is Premature .............20

        B.      OpenTV Sufficiently Pleads Willful Infringement in Its Third Amended
                Complaint...............................................................................................................21

                1.      OpenTV's Allegations of Apple's Pre-Suit Knowledge of the Asserted
                        Patents and Acts of Willful Infringement Are Sufficient ..........................21

                2.      OpenTV Properly Relies on the Complaints and Apple's Post-Filing
                        Conduct ......................................................................................................24

V.      CONCLUSION.................................................................................................................25

PLAINTIFFS' OPPOSITION TO
APPLE'S MOTION TO DISMISS
Case No. 3:14-cv-01622-JST

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alice Corp. Pty. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ................................................................................. *passim*

*Bilski v. Kappos,*
    130 S. Ct. 3218 (2010) ................................................................................. 8

*buySAFE, Inc. v. Google, Inc.*
    765 F.3d 1350 (Fed. Cir. 2014) .................................................................. 13

*Content Extraction and Transmission LLC v. Wells Fargo Bank,*
    No. 2013-1588, slip op. (Fed. Cir. Dec. 23, 2014) ...................................... 13

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    No. 2013-1505, 2014 WL 6845152 (Fed. Cir. Dec. 5, 2014) ..................... *passim*

*Diamond v. Diehr,*
    450 U.S. 175 (1981) ...................................................................................... 11, 12

*KSR Intern. Co. v. Teleflex Inc.,*
    127 S. Ct. 1727 (2007) .................................................................................. 9, 19

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    132 S. Ct. 1289 (2012) .................................................................................. 1, 19

*Microsoft Corp. v. i4i Ltd. P'ship,*
    131 S. Ct. 2238 (2011) .................................................................................. 8

*Parks v. Booth,*
    102 U.S. 96 (1880) ........................................................................................ 19

*In re Seagate Tech.., LLC,*
    497 F.3d 1360 (Fed. Cir. 2007) .................................................................... 24, 25

*Sentry Prot. Prods. Inc. v. Eagle Mfg. Co.,*
    400 F.3d 910 (Fed. Cir. 2005) ...................................................................... 23

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) ...................................................................... 12, 13

*Boundaries Solutions Inc. v. CoreLogic, Inc.,*
    No. 5:14-cv-00761-PSG, 2014 WL 4954017 (N.D. Cal. Sept. 29, 2014) ............... 22, 23

*Cal. Inst. Tech. v. Hughes Comm's, Inc.,*
    Case No. 2:13-cv-07245-MRP-JEM, 2014 WL 5661290 (C.D. Cal. Nov. 3, 1014) ............... 12, 18

*Clouding IP, LLC v. Google Inc.*,
 No. 12-639, 2013 WL 5176702 (D. Del. Sept. 16, 2013)............................................24

*DataQuill Ltd. v. High Tech Computer Corp.*,
 887 F. Supp. 2d 999 (S.D. Cal. 2011)......................................................................25

*Emblaze Ltd. v. Apple Inc.*,
 No. C 11-01079 SBA, 2012 WL 5940782 (N.D. Cal. Nov. 27, 2012 .........................22

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
 Nos. 13-1668, -1669, -1670, -1671, -1672, 2014 WL 4755518 (D. Del. Sept. 24,
 2014) ......................................................................................................................24

*Jardin v. Datallegro, Inc.*,
 No. 08-cv-1462, 2009 WL 186194 (S.D. Cal. Jan. 20, 2009) .............................22, 23

*MyMedicalRecords, Inc. v. Jardogs, LLC*,
 1 F. Supp. 3d 1020, 1026 (C.D. Cal. 2014) ........................................................24, 25

*OpenTV, Inc. v. Netflix Inc.*,
 Case No. 14-cv-01525-RS, Dkt. No. 71 (N.D. Cal. Dec. 16, 2014).........................20

*Oracle Corp. v. DrugLogic, Inc.*,
 807 F. Supp. 2d 885 (N.D. Cal. 2011) ...........................................................2, 21, 22

*Potter Voice Techs., LLC v. Apple Inc.*,
 No. C 13-1710 CW, 2014 WL 46768 (N.D. Cal. Jan. 6, 2014).................................23

*Rambus, Inc. v. Nvidia Corp.*,
 No. C 08-3343 SI, 2008 WL 4911165 (N.D. Cal. Nov. 13, 2008) .............................23

*St. Clair Intellectual Prop. Consultants, Inc. v. Palm, Inc.*,
 No. 06-404, 2009 WL 1649751 (D. Del. June 10, 2009) .........................................25

**Federal Statutes**

35 U.S.C. § 101.............................................................................................. *passim*

35 U.S.C. § 103.......................................................................................................15

35 U.S.C. § 112.......................................................................................................18

35 U.S.C. § 112(f).............................................................................................15, 20

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................25

iii

1   **I.      INTRODUCTION**

2          The Court should deny Apple's motion to dismiss OpenTV's infringement claims related to

3   U.S. Patent No. 5,689,799.  Apple argues these claims are invalid as abstract ideas under 35 U.S.C.

4   § 101 because they are allegedly "directed to a well-known, fundamental business practice and

5   include only the abstract idea of organizing and communicating data." Dkt. No. 97 at 12. Apple is

6   incorrect on both counts and fails to meet its clear-and-convincing burden.

7          Claims 1-12 define a technological solution to a technological problem at the time of the

8   '799 Patent, namely, how to transmit user data through an interactive information system without

9   requiring the user to send sensitive or confidential data over unsecure communication channels.

10  Apple ignores the technical context of the invention and engages in a game of abstraction—

11  attempting to characterize the claims as requiring "buyers" and "sellers," which are not recited in the

12  claims. Apple also incorrectly suggests the claims can be practiced manually using pen and paper,

13  e.g., like a business method, despite the absence of any teaching or suggestion that the computer-

14  networking solution disclosed in the '799 Patent can be performed manually. And Apple

15  capriciously changes its articulation of the alleged "abstract idea" throughout its motion, further

16  evidencing the strained position required to assert invalidity under § 101.[1] In short, the '799 Patent

17  claims are not directed to an abstract idea as Apple contends. Rather, they embody a technological

18  solution to a technological problem that propelled the commercial success of Wink

19  Communications, often recognized as the first company to provide interactive television, beyond the

20  "walled-garden"[2] network implementations used in the mid-1990s.

21         Apple's motion to dismiss OpenTV's willful infringement claims should also be denied. In

22  its Third Amended Complaint, OpenTV alleges that Apple has had actual knowledge of each

23

24  _____

25         [1] Importantly, the Supreme Court cautions that courts should "tread carefully in construing
    [the] exclusionary principle" that abstract ideas are not patentable "lest it swallow all of patent law."
26  *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354, (2014) (*citing Mayo Collaborative Servs.
    v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012)).

27         [2] In this context, a "walled garden" refers to a network or service, such as for cable or
28  satellite TV, that restricts or prohibits users from obtaining content from external sources.

Asserted Patent since the filing of the original Complaint. OpenTV also alleges that Apple had actual knowledge of the asserted '033 Patent much earlier because Apple cited that patent to the USPTO during prosecution of one of its own patent applications. Dkt. No. 092 ¶¶ 61, 79, 89, 99. OpenTV alleges, on information and belief, that Apple had knowledge of the other Asserted Patents before the filing of the original Complaint "by virtue of the Kudelski Group's role in the market and the impact of the Kudelski Group's portfolio on Apple's products." Further, OpenTV alleges on information and belief that, despite this knowledge, "Apple continued its infringing activities despite an objectively high likelihood that its activities constituted infringement of a valid patent." *Id*. at 61, 70, 79, 89, 99.

OpenTV's allegations of willful infringement are more than adequate under Northern District precedent, which requires only that OpenTV plead that Apple infringed with knowledge of the patent and of its infringement. *See, e.g.*, *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 902 (N.D. Cal. 2011). Contrary to Apple's assertions, OpenTV's allegations with respect to both Apple's pre-suit knowledge of the Asserted Patents and its acts of willful infringement meet that burden. OpenTV also properly relies on Apple's post-filing conduct as a further basis for its willful infringement allegations. In addition to inaccurately complaining that the pleadings are insufficient to establish a claim of willfulness, Apple also complains that OpenTV should have additionally sought a preliminary injunction. That OpenTV chose not to burden this Court with further motion practice should not excuse Apple from responding to well-pleaded willfulness allegations. Indeed, nowhere in Apple's motion does Apple deny pre-suit knowledge for any of the patents. OpenTV's reliance on Apple's post-filing conduct is proper.

## II.     STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Apple has established, by clear and convincing evidence, that the '799 Patent is invalid for claiming a patent-ineligible abstract idea?

2.     Whether OpenTV's allegations that Apple's infringement of the patents-in-suit has been willful should be dismissed at the pleading stage for failure to state a claim?

## III.    STATEMENT OF FACTS

### A.     The '799 Patent

### 1. Wink Communications

A group of individuals including Brian Dougherty and Eric Del Sesto founded Wink Communications, Inc. in Alameda, California in 1994. Wink's mission was to create interactive television and, more particularly, "an end-to-end solution for sending interactive applications along with broadcast video to viewer's televisions." Ex. 2 to Declaration of Stephen E. Kabakoff in support of Plaintiffs' Opposition to Apple's Motion to Dismiss, dated January 12, 2015.[3]

Wink sought to unlock the potential of interactive television by building upon the existing television infrastructure. For example, Wink's service enabled viewers to order products displayed on television or receive more information (such as player statistics during a ballgame) from their television sets all while continuing to watch television programming. Ex. 3. Wink collected the viewers' responses for purchases and information requests, aggregated them, and forwarded them to the appropriate advertiser, merchandiser, or program provider in a secure manner. *Id*.

### 2. Technology of the '799 Patent

In 1995, co-inventors Mr. Dougherty and Mr. Del Sesto filed a patent application that became U.S. Patent No. 5,689,799, one of Wink's pioneering patents in the field of interactive television. Ex. 1. The '799 Patent generally "relates to broadcast and receiving systems, and more specifically, to interactive broadcast and receiving systems." *Id*. at 1:17-19. The specification describes technical obstacles to providing a fully interactive television service in the mid-1990s: bandwidth limitations and unsecure communication channels. *Id*. at 1:35-58. At that time, television broadcasters could send small amounts of data to television viewers by transmitting data during the Vertical Blanking Interval (VBI) of television broadcasts. *Id*. at 1:29-39. Because television is displayed as a series of still images, and the human brain can only process images so fast, the VBI is the small window of time between adjacent images that can be used to transmit data. *Id*. For example, the VBI may contain data such as closed captioning text for a viewer. *Id*. While the VBI can provide an inexpensive mechanism for transmitting data to a user, it is only one-way and cannot

---

[3] Unless otherwise indicated, all Exhibits in this paper refer to those accompanying the concurrently-filed Declaration of Stephen E. Kabakoff.

1    be used for transporting data from a user. *Id.* at 1:35-39.

2          To send data to a broadcaster or vendor, users had to physically walk into a store or call the

3    vendor using a telephone, for example, to order a product seen on television. The inventors

4    recognized that, in the context of the computer networks used to implement interactive television

5    services, the existing network communications channels were "not be suitably secure to allow a user

6    to conveniently and inexpensively communicate confidential information to a vendor." *Id.* at 1:48-

7    52. Indeed, at the time of the invention "the Internet provided no standard mechanisms for secure

8    communication of confidential information," such as information relating to a user's purchase

9    through an interactive application. Ex. 4 at OPENTV0001607, 1687. The '799 Patent describes

10   systems and methods for transmitting user data, such as confidential purchase information or other

11   sensitive user data, through an interactive information system without requiring the user to send that

12   sensitive or confidential data over unsecure communication lines. Ex. 1 at 1:65-2:3. This problem

13   did not exist before interactive information systems. For example, in the brick-and-mortar context,

14   users could safely communicate their sensitive or confidential user data in person, i.e., at a vendor

15   location, or by a telephone call or facsimile.

16          The '799 Patent describes embodiments that use three hardware components: a provider

17   component, a reception component used to implement a graphical interactive information system,

18   and a response collector component coupled to reception components and vendor ordering

19   equipment via electronic communication lines. *Id.* at 5:9-10:42; 24:21-25:39. The provider

20   component transmits interactive applications to reception components. *Id.* at 1:13-18, 39-41; 5:39-

21   41. The reception component receives the signal from the provider component. *Id.* at 1:13-18. The

22   reception component may provide a "return channel" for the user to send upstream data, such as a

23   communications path to a response collector. *Id.* at 9:52-10:8. The reception component can generate

24   a "response record," as described in the patent, that it transmits to the response collector. *Id.* at

25   24:22-34. Among other things, the response record may include identifiers that have been assigned

26   to reception components, individual users, and applications. *Id*. at 24:26-34; 24:35-41.

27          The response collector in the disclosed embodiments is equipment that "react[s] to the receipt

28   of responses sent by a reception component . . . by sending user information and other information to

PLAINTIFFS' OPPOSITION TO
APPLE'S MOTION TO DISMISS
Case No. 3:14-cv-01622-JST

vendor ordering equipment." *Id*. at 24:54-25:11. "The response collector obtains routing information and an application identifier . . . and associates the routing information with the application identifier." *Id*. at 25:24-27. Further, the "application identifier . . . and a user reception component and user identifiers are sent to the response collector. Because no confidential information is sent, unsecure communication lines may be used to send the information. The response collector then forwards the user information including user confidential information and response information to the vendor associated with the application identifier received. . . . The vendor may then provide a service or products to the users address with less likelihood of fraud." *Id*. at 25:28-39.

### 3.   Wink's Commercial Success

The technology described in the '799 Patent was fundamental to Wink's product offering, described as "enhanced broadcasting," and its commercial success. Ex. 2 at 1; Ex. 5 at 173. Using this technology, Wink's service was able to handle the technical challenge "of smoothly handling millions of simultaneous retail transactions in real-time" using unsecure computer networks. Ex. 5 at 178. Wink launched its service in Japan in 1996, and by 2002 Wink was offering its service to more than 300,000 households in the United States with projections to scale to 4 million users by mid-2003. *Id.* at 233. Wink partnered with a number of programming networks (e.g. CNN, ESPN, HBO, NBC, TBS, TNT, and VH1) and formed strategic relationships with cable operators and hardware manufacturers (e.g. Pioneer, Scientific-Atlanta, Toshiba, and Time Warner Cable). Ex. 6; Ex. 7. During this time, Wink also partnered with OpenTV, the industry-leading provider of software for set-top boxes. Ex. 8. The collaboration with OpenTV was also a success, leading to OpenTV's acquisition of Wink Communications in 2002 for more than $100 million. Ex. 9.

### 4.   Asserted Claims 1-12

The '799 Patent includes 20 claims, two of which (claims 1 and 3) are independent. Ex. 1. Claims 1 and 2 are system claims, and the remainder are method claims. In this case, OpenTV alleges that Apple infringes claims 1-12. Apple's motion only challenges the validity of asserted claims 1-12. Dkt. No. 97 at 17. Each asserted claim is addressed separately below.

Claims 1 and 2 recite a system comprising three hardware components—"a provider

component," "a reception component," and "a response collector component"—and describes the specific interactions between these claimed components:

> 1. [A] system for routing confidential user information to a vendor comprising:
>
> > a provider component for broadcasting an application identifier to at least one reception component;
> >
> > a reception component for storing at least one user identifier, receiving and storing the application identifier, assembling user response information, and transmitting to a response collector the application identifier received and the user response information assembled; and
> >
> > a response collector component for storing the application identifier and vendor routing information, associating the application identifier with the vendor routing information, receiving the application identifier and user response information from the reception component, and transmitting the user response information to the vendor associated with the application identifier received.
>
> 2. The system of claim 1 wherein:
>
> > the reception component is additionally for transmitting at least one user identifier to the response collector; and
> >
> > the response collector is additionally for:
> >
> > > storing at least one user identifier and other user information;
> > >
> > > associating at least one user identifier with the other user information;
> > >
> > > receiving the user identifier from the reception component; and
> > >
> > > transmitting to the vendor the user information associated with the user identifier received.

Claim 3 recites a specific method that may be used for routing confidential user information to a supplier. Unlike the system claims, which require three specific hardware components configured to operate in a specific manner, the method claims are directed to combinations of steps that may be performed by a single component. Claim 3 recites:

> 3. A method of routing confidential user information to a supplier comprising:
>
> > storing an application identifier and vendor routing information;
> >
> > associating the vendor routing information with the application identifier;

6

receiving an application identifier and user response information; and

transmitting at least a portion of the user response information
received responsive to the vendor routing information associated
with the application identifier received.

Claims 4 through 12 depend from claim 3 and further limit the claimed method to specific applications. For example, claim 4 provides additional details regarding the type of data stored, associations made between the stored data, and how data is transmitted. Claim 5 provides further details on which information is confidential. Claim 6 provides that certain information is verified. Finally, claims 7-12 provide additional detail regarding the method of communication, more specifically, which communications paths are unsecured.

**B.      OpenTV's Willfulness Allegations**

OpenTV filed a Complaint for Patent Infringement against Apple on April 9, 2014, alleging infringement of U.S. Patent Nos. 5,566,287, 5,689,799, 5,884,033, 6,985,586, and 7,900,229 (collectively "the Asserted Patents"). Dkt. No. 1. OpenTV filed amended complaints on April 10, 2014, and August 28, 2014. Dkt. Nos. 8, 60.

In response to Apple's objection that OpenTV included willful infringement contentions in its infringement disclosures under Patent Local Rule 3-1, OpenTV sought leave to amend its complaint to expressly add allegations of willful infringement. Dkt. No. 78. On December 16, 2014, OpenTV filed a Third Amended Complaint ("TAC"). Dkt. No. 92, *see also* Dkt. No. 89 and 91. In its Third Amended Complaint, OpenTV added willful infringement claims for each Asserted Patent. *Id.* ¶¶ 61, 70, 79, 89, 99. In support of those claims, OpenTV alleges that "Apple had actual knowledge of the [Asserted Patents] by April 9, 2014, upon the filing of Plaintiffs' Complaint for Patent Infringement." *Id.* OpenTV also alleges that "Apple had actual knowledge of the '033 Patent by May 23, 2006, when the '033 Patent was identified by Apple to the USPTO during prosecution of the application that led to U.S. Patent No. 7,640,305, which is assigned to Apple." *Id.* ¶ 70. With respect to the '799, '287, '586, and '229 patents, OpenTV alleges, on information and belief, that Apple had knowledge of those patents "prior to the filing of Plaintiffs' Complaint for Patent Infringement by virtue of the Kudelski Group's role in the market and the impact of the Kudelski

Group's portfolio on Apple's products." *Id.* ¶¶ 61, 79, 89, 99. For each Asserted Patent, OpenTV further alleges: "Despite this knowledge, on information and belief, Apple continued its infringing activities despite an objectively high likelihood that its activities constituted infringement of a valid patent." *Id.* ¶¶ 61, 70, 79, 89, 99.

## IV.    ARGUMENT

### A.    '799 Patent Claims 1-12 Recite Patent-Eligible Subject Matter

#### 1.    Legal Standards

The standard of proof to establish the invalidity of a patent under 35 U.S.C. § 101 is "clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). Section 101 of the Patent Act provides the categories of subject matter that are eligible for patent protection. The Supreme Court has held that laws of nature, natural phenomena, and abstract ideas are not patentable under Section 101. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). Apple contends that each of claims 1-12 in the '799 Patent is an abstract idea.

The Supreme Court has provided a two-step analytical framework under § 101 "to distinguish patents that claim patent-ineligible laws of nature, natural phenomena, and abstract ideas—or add too little to such underlying ineligible subject matter—from those that claim patent eligible applications of those concepts." *DDR Holdings, LLC v. Hotels.com, L.P.*, No. 2013-1505, 2014 WL 6845152 at *8 (Fed. Cir. Dec. 5, 2014) (citing *Alice*, 134 S. Ct. at 2355). This framework asks: (1) whether the claims at issue are directed to a patent-ineligible abstract idea, and (2) if so, whether the elements each claim—both individually and considered as an ordered combination— transform the nature of the claim into a patent-eligible application of that abstract idea. *Id.*

The Supreme Court has cautioned courts to "tread carefully" in construing the scope of subject matter that is ineligible for patenting under Section 101, since every invention at some level is directed to an abstract concept. *Alice*, 134 S. Ct. at 2354 ("[W]e tread carefully in construing this exclusionary principle [of Section 101] lest it swallow all of patent law. . . . an invention is not rendered ineligible for patent simply because it involves an abstract concept"); *Bilski v. Kappos*, 130 S. Ct. 3218, 3228-30 (2010) (refusing to adopt a categorical rule denying patent protection for

1    business methods). The Supreme Court, moreover, has acknowledged that "inventions in most, if not

2    all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of

3    necessity will be combinations of what, in some sense is already known." *KSR Intern. Co. v. Teleflex*

4    *Inc.*, 127 S. Ct. 1727, 1741 (2007).

5              2.      **The '799 Patent Is Not Directed to an Abstract Idea**

6              The first step of the *Alice* framework for a § 101 analysis requires Apple to prove that the

7    claims are directed to an abstract idea. Apple fails this test.

8              Apple argues that the '799 Patent is invalid because the claims allegedly "include only the

9    abstract idea of organizing and communicating data." Dkt. No. 97 at 12. Even a cursory review of

10   claims 1-12 illustrates that they recite multiple, specific limitations and are not limited to only

11   "organizing and communicating data." In fact, in its motion Apple manufactured several different

12   alleged abstract ideas that it changed to match its various arguments. If there truly were a single

13   abstract idea covered by the claims, Apple would not have struggled so extensively to identify it.

14   Instead, Apple offered various, shifting formulations of the alleged abstract idea, for example: "using

15   code names to identify information relating to buyers and sellers in a business transaction" (*id.* at 8),

16   "routing information between two parties using a third-party intermediary," "using code names to

17   identify information," "ways of organizing and communicating information" (*id.* at 9), "organization

18   and communication of data using 'identifiers' to identify buyer and vendor information" (*id.* at 10),

19   "using an 'application identifier' to identify the 'vendor routing information' in the communication

20   of buyer information" (*id.* at 11), and "organizing and communicating data" (*id.* at 12).

21             Apple's inability to identify a consistent formulation of the abstract idea is itself evidence

22   that the '799 Patent is not directed to a patent-ineligible abstract idea. *See DDR*, 2014 WL 6845152

23   at *8-*12 (holding patent directed to eligible subject matter where defendant offered "varying

24   formulations of the underlying abstract idea").[4] Apple cannot reasonably contend that claims 1-12

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26        [4] In *DDR*, the Federal Circuit found the claims addressed a business challenge particular to
     the Internet and "identifying the precise nature of the abstract idea is not as straightforward as in

27   *Alice* or some of our other recent abstract idea cases." 2014 WL 6845152 at *10. Here, the claims of
     the '799 Patent similarly address a challenge particular to computer networking, as discussed below,

28   and Apple likewise struggled to identify an abstract idea.

1    would pre-empt any of the overly-broad concepts that it identifies in its motion, such as "organizing

2    and communicating data." *See, e.g.*, *Alice*, 134 S. Ct. at 2358 (referring to "the pre-emption concern

3    that undergirds our § 101 jurisprudence"). As noted, the claims recite specific combinations of claim

4    elements that are more specific than any of Apple's various abstract ideas.

5           Apple also mischaracterizes the '799 Patent as "a prime example of a business method patent

6    that should have never been granted." Dkt. No. 97 at 2. Apple strains to justify this "business method

7    patent" assertion by using business terminology that appears nowhere in the claimed invention. For

8    example, Apple characterizes the basic idea of the invention as requiring "buyers" and "sellers" in

9    business communications. *Id.* at 6. The claims do not recite nor require buyers and sellers as Apple

10   alleges. Similarly, Apple alleges that the "response collector component" in the '799 Patent must

11   necessarily be an "order processing computer," and Apple contends that "responses" in the patent

12   are "orders received from buyers." *Id.* Again, the claims do not recite, and are not limited to, "order

13   processing computers" and "orders received from buyers" as Apple contends. In short, Apple

14   attempts to mischaracterize the technical innovation of the Wink system and method described in the

15   '799 Patent by mislabeling its claim elements.

16          If the Court were required to characterize an idea embodied in the '799 Patent (and it is not),

17   it should adopt a formulation consistent with the context of the invention and the technical problem

18   solved by the '799 Patent. The '799 Patent sought to provide systems and methods whereby a user

19   could send identifiers in an interactive information system, for example, to purchase a product or

20   service, without the user having to send sensitive or confidential data over an unsecure

21   communication channel in the computer network. The Wink service described in the '799 Patent

22   thus addressed the technical limitations of securely communicating user data using interactive

23   applications and computer networks having unsecure communication channels. It was this

24   technological contribution that gave Wink the reputation as being the first company to deliver

25   interactive television. Ex. 10 at 2 ("Wink is the first interactive television player to successfully

26   overcome the industry's challenge . . ."). And Wink's practical application of this solution led to its

27   commercial success and eventual acquisition by OpenTV for more than $100 million.

28

1    The claims of the '799 Patent are analogous to claims other courts have held to be patent

2  eligible. For example, in *Diamond v. Diehr*, 450 U.S. 175 (1981), the Supreme Court held that

3  claims directed to a process for molding uncured rubber into cured products was patent-eligible. At

4  the time of that invention, a general method for curing rubber was known, but "the industry ha[d] not

5  been able to obtain uniformly accurate cures because the temperature of the molding press could not

6  be precisely measured, thus making it difficult to do the necessary computations to determine cure

7  time." *Id.* at 178. In other words, the industry had been unable to measure the temperature inside the

8  rubber-curing press. *Id.* The patent at issue in *Diehr* taught the use of a thermocouple, a conventional

9  device invented a century earlier in the 1800s, "to record constant temperature measurements inside

10  the rubber mold" and feed those measurements into a conventional computer. *Alice*, 134 S. Ct. at

11  2358. This practical combination of conventional devices "transformed the process into an inventive

12  application," "improved an existing technological process," and was deemed patent eligible. *Id.* The

13  claims directed to that invention passed the patent-eligibility threshold even though none expressly

14  required the use of a thermocouple. *See Diehr*, 450 U.S. at 179 n.5.

15    Similarly, in *DDR*, the Federal Circuit recently held claims directed to a process for

16  providing a uniform "look and feel" across webpages to be patent eligible. *DDR*, 2014 WL 6845152

17  at *8-*12. In *DDR*, the claims addressed a business challenge particular to the Internet: retaining

18  website visitors. *Id.* at *10. Although the claims involved both a computer and the Internet, the

19  Federal Circuit held that the claims at issue stood apart "because they do not merely recite the

20  performance of some business practice known from the pre-Internet world along with the

21  requirement to perform it on the Internet." *Id.* "Instead, the claimed solution is necessarily rooted in

22  computer technology in order to overcome a problem specifically arising in the realm of computer

23  networks." *Id.* Although the dissent in *DDR* abstracted the inventive concept as a "store within a

24  store" known to the pre-Internet world, "that practice did not have to account for the ephemeral

25  nature of an Internet 'location' or the near-instantaneous transport between these locations made

26  possible by standing Internet communications protocols, which introduces a problem that does not

27  arise in the 'brick and mortar' context." *Id.* at *11. "In short, the claimed solution amounts to an

28  inventive concept for resolving this particular Internet-centric problem, rendering the claims patent-

eligible." *Id.* at *12. *See also Cal. Inst. Tech. v. Hughes Comm's, Inc.*, Case No. 2:13-cv-07245-MRP-JEM, 2014 WL 5661290 at *20 (C.D. Cal. Nov. 3, 1014).

Here, as in *Diehr* and *DDR*, the '799 Patent combines conventional elements in a novel way to provide a technological solution to a technological process. "[T]he creation of new compositions and products based on combining elements from different sources has long been a basis for patentable inventions." *DDR*, 2014 WL 6845152 at *11 n.5. In *Diehr*, the Supreme Court held that the patent applicant was not seeking to patent the well-known use of a mathematical formula used to cure rubber. 450 U.S. at 187. Instead, the patent applicant sought to patent a solution to a technological problem in conventional industry practice: how to accurately record constant temperature measurements inside a rubber mold to improve the final rubber product using conventional rubber presses, a computer, and a thermocouple. *Id.* at 177-78; *see also Alice*, 134 S. Ct. at 2358. Likewise, in *DDR* the Federal Circuit held that the patentee did not seek to patent the abstract concept of a "store within a store"; instead, the patentee provided an inventive concept (a specific combination of conventional elements) to overcome a problem specifically arising in the technical realm of computer networks. *DDR*, 2014 WL 6845152 at *11-*12.

Here, the '799 Patent is directed to providing a specific solution to overcome a technological problem that arose in the realm of electronic communications for interactive information systems, such as interactive television: how to transmit user data through an interactive information system without requiring the user to send sensitive or confidential data over unsecure communication lines. To be clear, television broadcasting, computers, electronic communication, and the Internet were known in the art. The inventors discovered a novel way to combine these components to provide electronic communication of user information over inherently unsecure communication lines using identifiers as claimed.

The '799 Patent, which provides a practical technological solution to a specific problem that existed in the art, stands apart from abstract ideas held to be patent ineligible. For example, in *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014), the Federal Circuit invalidated claims that merely recited the abstract idea of using advertising as a currency as applied to the particular technological environment of the Internet. The claims of the patent in *Ultramercial* simply

added routine steps specified at a high level of generality and were not tied to any particularly novel machine or apparatus. *Id.* at 714-717. As stated by Judge Mayer in concurrence, the purported innovative aspect in Ultramercial's patent was an "entrepreneurial rather than a technological one." *Id.* at 717. Here, by contrast, the '799 Patent is directed to a technological solution to a technological problem: systems and methods whereby a user could transmit upstream data using an interactive application without the need to send the user's sensitive or confidential information over an unsecure communication channel of a computer network.

The '799 Patent does not simply "computerize" an abstract business method. The specification, for example, provides a lengthy detailed description, more than twenty figures, and a pseudocode appendix, disclosing the technological aspects of the invention. Unlike claims drawn to unpatentable abstract ideas, the claims of the '799 Patent are directed to a specific, concrete application. *Cf. Content Extraction and Transmission LLC v. Wells Fargo Bank*, No. 2013-1588, slip op. at 7 (Fed. Cir. Dec. 23, 2014) (affirming rejection of claims "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in memory"); *buySAFE, Inc. v. Google, Inc.* 765 F.3d 1350, 1355 (Fed. Cir. 2014) (holding invalid claims reciting no more than using a computer to send and receive information over a network in order to implement the abstract idea of creating a "transaction performance guaranty").

### 3. Claims 1-12 Limit the Invention to a Specific Application That Provides a Technological Solution to a Technological Problem

Even if this Court were to find the '799 Patent is directed to an abstract idea, the claims are sufficiently limited that they pass the second step of the *Alice* framework and are eligible for patent protection. Under the second step of the *Alice* framework, the elements of each claim are considered, both individually and as an ordered combination, to determine whether these claim elements transform the nature of the claim into a patent-eligible application of the abstract idea. *See DDR*, 2014 WL 6845152 at *8 (citing *Alice*, 134 S. Ct. at 2355).

As explained above, the '799 Patent addresses problems associated with providing electronic communication of user data without requiring a user to transmit sensitive or confidential information over inherently unsecure communication lines of a computer network. The '799 Patent describes this

as a practical solution to the problem. While it may use a combination of conventional mechanisms to provide the solution, Wink was the first to provide this inventive combination and is credited as the provider of the first interactive television service. *See, e.g.*, Ex. 10 at 2. Accordingly, the claims are not directed to some idea in the abstract, but rather provide a practical technical solution to a problem that, before Wink, nobody was able to solve. The claimed solution is rooted in computer technology applied for consumer benefits in order to overcome a problem specifically arising in the realm of computer networks for interactive information systems.

a.    **Claims 1 and 2 recite significantly more than an abstract idea**

Apple argues that claims 1-2 cover the abstract idea of "using code names to identify vendor and buyer information." *See, e.g.*, Dkt. No. 97 at 15. But claims 1 and 2 recite elements significantly more specific than Apple's vague abstract idea. *See, e.g.*, *Alice*, 134 S. Ct. at 2355. For example, claim 1 recites a system that may be used for routing confidential information including a provider component that broadcasts an application identifier to at least one reception component, a reception component that assembles and transmits a specific response to a response collector, and a response collector that receives this specific response and transmits a response to a vendor. Each of these "components" is described in the specification as a hardware component, and examples of specific concrete, physical components are provided in the specification. Claim 1 provides particular details as to what and how the information is transmitted from the provider component, to the reception component, and then ultimately to the vendor. Claim 2 provides additional details regarding the reception and response collector components and their interactions. For example, the reception component in claim 2 is also configured to transmit at least one user identifier. Moreover, the response collector component is further limited to those that store, associate, receive, and transmit this user identifier to the vendor. The limitations of claim 2 provide the ability for the user to send user data, for example to purchase a product or service, through an interactive application without the need to transmit the user's sensitive or confidential data over an unsecure communications channel. Although Apple argues the required structural elements of claims 1 and 2 exist and are defined in the specification (Dkt. No. 97 at 15-17; Dkt. No. 95-1 at 16-23), it urges the Court to find these still unconstrued claims invalid as abstract ideas at the pleading stage. Apple cannot have it

14

both ways.

Apple also discounts the importance of the express limitations in the claims by arguing that each individual claim limitation, by itself, is merely a "conventional" component. Yet, patents are often granted for novel and unique combinations of known components. The fact that each of the components, individually, may have been known in the art is not determinative of validity under § 101. *See, e.g.*, *DDR*, 2014 WL 6845152 at *11 n.5 ("On a fundamental level, the creation of new compositions and products based on combining elements from different sources has long been a basis for patentable inventions"). Such is the function of an obviousness challenge under § 103.

Although the first half of Apple's motion incorrectly argues that the system claims 1-2 only recite "structureless" components, Dkt No. 97 at 7-8, the second half of Apple's motion acknowledges that details regarding these claimed "components" are found within the specification, Dkt No. 97 at 15-16. Apple has even proposed that certain limitations of the '799 Patent should be construed as means-plus-function claims. But means-plus-function elements *are* limited in scope to the embodiments disclosed in the specification and their equivalents, 35 U.S.C. § 112(f). Thus, the disclosed structures corresponding to the claimed "components" in claims 1-2 under Apple's proposed constructions (and as acknowledged in Apple's motion) belie Apple's § 101 arguments that these claimed "components" allegedly are abstract ideas having no corresponding structures.

### b.      Claims 3-12 also recite significantly more than an abstract idea

Apple is wrong to suggest that method claims 3 through 12 pre-empt all possible applications of Apple's alleged abstract idea of "using code names to identify vendor and buyer information." Dkt. No. 97 at 15. To the contrary, claim 3 describes a specific method that can be performed by a single entity and is directed to solving a specific technological problem. It provides a method that may be used to route user data using certain identifiers over an unsecure communications channel in an interactive information system. Claim 3 comprises four steps and requires storing an "application identifier" and "vendor routing information," associating these two, receiving an application identifier and user response information, and transmitting at least a portion of the user response information responsive to the vendor routing information. Claim 3 recites significantly more than the overly-broad abstract idea alleged by Apple. *See, e.g.*, *Alice*, 134 S. Ct. at 2355.

Claim 4 further provides that the method also receives a user identifier associated with certain other user information, and that this user information is transmitted responsive to the vendor routing information. Claim 5 provides that this user information includes confidential information, such as a user's credit card information. Claim 6 further provides an additional application of verifying the user information. Claims 7-12 further describe that communication channels over which information is sent and received are unsecure facilities.

### 4.  Apple Incorrectly Groups System Claims 1-2 With Method Claims

Apple improperly groups the system claims 1-2 with methods claims 3-12 to make it appear that they should rise or fall together for purposes of § 101. They should not. The system and method claims have clearly different scopes. System claims 1 and 2 recite specific interactions between three different hardware components, whereas method claims 3-12 are directed to combinations of steps that may be performed by a single component. There are no limitations in the method claims corresponding to the "provider" and "reception" components recited in the system claims, let alone the specific claimed interactions between the "provider," "reception," and "response collector" components recited in the system claims. Thus, Apple incorrectly asserts that "Claim 1 attempts to cover the same abstract idea as claim 3 in a system-claim form." Dkt. No. 97 at 11; *see also id.* at 12 (alleging "claim 1 is directed to the same abstract idea as claimed by method claim 3").

Apple has not shown how a single abstract idea could account for the differences in claim scope among the system and methods claims. This is further evident by Apple's inability to identify a consistent version of its alleged abstract idea, routinely changing the purported idea throughout its motion. *See, e.g., id.* at 2 ("abstract idea of using code names, called 'identifiers,' to identify information relating to buyers and vendors in a business transaction"); *id.* at 10 ("the idea of using a code name to organize and communicate information"); *id.* at 12 ("Claims 1-12 of the '799 patent . . . include only the abstract idea of organizing and communicating data"); *id.* at 13 ("the abstract idea of associating code names to vendor and buyer data").

Apple has not satisfied its clear-and-convincing burden for at least the reason that it improperly groups claims 1-12 of varying scope and fails to identify any *single* abstract idea that

16

could justify by-passing a distinct analysis for each of these claims.

### 5.    Apple's Hypothetical Is Inapposite

Apple argues that the asserted claims can be performed manually and without a computer by an owner of a mail-order business and, therefore, are allegedly directed to an abstract idea ineligible for patent protection. Dkt. No. 97 at 11. Apple's argument must be rejected for several reasons. First, Apple's hypothetical is limited to method claim 3 and does not—and cannot—apply to system claims 1 and 2. Indeed, as discussed above, claims 1-2 require three hardware components that interact over a computer network in a specific manner detailed in the claims. Apple does not contend that its hypothetical "Alice" or "Bob" forms a system having the specific hardware components and interactions recited in claims 1-2.

Further, whether steps of a computer-related invention can be performed without using a computer is not the legal test to determine whether patent claims are eligible for patent protection. *See, e.g.*, *Alice*, 134 S. Ct. at 2355. Instead, the first step of the test is whether the patent is directed to an abstract idea, as opposed to a practical application. Here, the claims are not directed to the use of code names, as Apple suggests in its hypothetical. Instead, they claim a solution to a specific problem that arose in the context of computer networking: how to handle transmission of a user's sensitive or confidential data in an interactive information system that uses a computer network having unsecure communications channels. But even under Apple's "performed without a computer" standard, the claims easily pass the patent-eligibility threshold.

The system claims of the '799 Patent (claims 1 and 2) cannot be performed using pen and paper. These claims recite physical components absent from Apple's "Alice and Bob" hypothetical. Specifically, Apple's hypothetical omits the claimed "provider component," "reception component," and "response collector component" as claimed and described in the '799 Patent. Apple brushes these claimed components aside, arguing that they are "structureless" and "perform basic functions." (Dkt. No. 97 at 11-12). But the written description of the '799 Patent describes the claimed components in detail, including under separate headings. Further, whether a claim recites sufficient structure is decided under 35 U.S.C. § 112, and is not an patent-eligibility inquiry under §101.

The method claims also, contrary to Apple's hypothetical, cannot be performed with pen and paper. A person having ordinary skill in the art in the mid-1990s readily understood the meaning of claim terms such as "storing," "routing," and "transmitting," as actions that could not be performed using pen and paper. Apple's "Alice and Bob" hypothetical proposes a construction of these limitations that is contrary to these well-understood definitions. A person of ordinary skill in the art would have understood that the invention applies to the computer-networking environment as extensively described in the '799 Patent specification. Significantly, the specification does not describe any manual steps using pen and paper for practicing the invention, such as those alleged by Apple. Thus, taking the invention in its proper context, writing names in a notebook as described in Apple's hypothetical is not "storing an application identifier" as claimed. To a person of ordinary skill in the art, this claim step requires a computer operation as described in the specification.

In addition, the '799 Patent was simply not directed to (and does not apply to) solving the problems of a mail-order business. It was aimed at solving a problem in the field of sending upstream user data over unsecure communications channels in computer networks, where a malicious interloper (e.g., hacker) could potentially intercept a user's sensitive data during transmission over an unsecure communication channel. There is simply no analogy to Apple's "Alice and Bob" hypothetical, where Alice and Bob communicate using telephone calls rather than over unsecure network communication channels. Apple's hypothetical fails to acknowledge that the invention reduced the risk of fraud and data loss despite the use of unsecure network channels. Like the patent claims in *DDR*, the claims of the '799 Patent address a technical problem that "does not arise in the 'brick and mortar' context" and provides a solution particular to the context of computer networks. *See DDR*, 2014 WL 6845152 at *11; *see also Cal. Inst. Tech*, 2014 WL 5661290 at *16 (identifying problems with "pencil-and-paper analysis" in computer-implemented inventions).

### 6.    Apple Fails to Consider the Claims in Their Entireties

The Supreme Court explained that a proper § 101 analysis must first determine if the claims are directed to an abstract idea, and if so, then "*consider the elements of each claim* both individually and *'as an ordered combination'* to determine whether the additional elements 'transform the nature

1    of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct.

2    at 1297) (emphasis added). The Court further explained, "We have described step two of this

3    analysis as a search for an 'inventive concept'—i.e., an element or *combination of elements* that is

4    'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the

5    [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294) (emphasis added). For more than

6    a century of Supreme Court precedent, it is well established that combinations of known elements

7    may be patent eligible. *See, e.g.*, *DDR*, 2014 WL 6845152 at *11 n.5 (citing *KSR*, 127 S. Ct. at 1741

8    and *Parks v. Booth*, 102 U.S. 96, 102 (1880)).

9            Apple's motion only discusses the elements of claims 1-12 individually and does not further

10   consider the claims in their entireties, as inventions comprising combinations of multiple claim

11   elements. *See, e.g.*, Dkt. No. 97 at 13-17. Because Apple's claim element-by-claim element analysis

12   fails to consider claims 1-12 in their entireties as novel combinations of claim elements, Apple fails

13   to properly apply step 2 of the *Alice* framework as required for a § 101 analysis.

14           Despite failing to consider claims 1-12 in their entireties, Apple argues that none of the

15   claims of the '799 Patent recite an "inventive concept." *See, e.g.*, Dkt. No. 97 at 13-17. Apple,

16   however, does not identify any prior art to support this accusation. And to the contrary, the U.S.

17   Patent and Trademark Office allowed claims 1-12 over the prior art of record and found that the

18   claims did, in fact, recite novel and nonobvious subject matter. Apple's argument instead hinges on

19   its incorrect view that each recited claim element, individually, can be implemented using only

20   conventional hardware or is not tied to a specific structure or machine. Apple does not recognize the

21   inventive aspects of the claims as a whole.

22           Apple also asserts that department stores, law firms, hospitals, Sears, and the U.S. Post

23   Office, among others, have used the invention claimed in the '799 Patent long before Wink filed for

24   the '799 Patent. Dkt. No. 97 at 9. To that end, Apple equates the '799 Patent claims with

25   miscellaneous and seemingly unrelated uses of codes, numbers, and names, including zip codes used

26   on postage, client numbers used by lawyers, library call numbers used by librarians, product names

27   used at Sears, and others. *Id.* Of course, if Apple truly believed that any of this alleged prior art was

28   anticipatory or rendered any of claims 1-12 obvious, Apple could have identified them in its

PLAINTIFFS' OPPOSITION TO
APPLE'S MOTION TO DISMISS
Case No. 3:14-cv-01622-JST

1    invalidity contentions, which it did not. Indeed, none of these examples solved the problem in the

2    specific way described and claimed in the '799 Patent. Rather, the asserted claims are narrowly

3    focused and provide a specific implementation to solve a specific technological problem.

### 7.    Apple's Motion to Dismiss the '799 Patent Claims Is Premature

5         Apple's motion to dismiss is premature in view of its own proposed claim constructions for

6    the '799 Patent and the procedural schedule. For this reason alone, Apple's motion should be

7    dismissed at this early stage and at least until after the Court issues its claim construction order.

8         Apple argues, on the one hand, that asserted claims 1-2 are an abstract idea, alleging that "the

9    specification [of the '799 Patent] makes clear that the claimed invention is not even limited to a

10   particular technology," Dkt. No. 97 at 15, and that "the generic 'component' terms [in claims 1-2]

11   fail to supply an inventive concept needed to transform claims 1 and 2 into a patentable subject

12   matter" under 35 U.S.C. § 101, *id.* at 17. Yet, Apple has simultaneously taken the position that the

13   same "component" elements in claims 1-2 are means-plus-function terms subject to construction

14   under 35 U.S.C. § 112(f) and, as such, are limited to specific structures and equivalents disclosed in

15   the specification.[5] Apple cannot reasonably have it both ways. That is, the "component" elements in

16   claims 1-2 cannot be limited to specific technology (and equivalents) disclosed in the specification

17   for purposes of claim construction, and at the same time correspond to abstract concepts allegedly

18   having no corresponding structure for purposes of § 101.[6]

19        The very nature of Apple's contradictory positions demonstrates that Apple cannot lodge a

20   prima facie case under § 101 prior to the Court's claim construction ruling and its motion should be

21   denied.

22   ───────────────────────

23        [5] OpenTV disagrees with Apple on this point and contends that the plain language both

24   provides sufficient structure and would be clear to persons having ordinary skill in the art at the time
     of the invention.

25        [6] Apple selected one of the "component" elements recited in claim 1 as one of the 10 terms it
     believes the Court should construe. Without agreeing with Apple's position, at least this claim

26   construction needs to be resolved before the question of whether the claims are directed to an
     abstract idea is ripe for determination. *See, e.g.*, *OpenTV, Inc. v. Netflix Inc.*, Case No. 14-cv-01525-

27   RS, Dkt. No. 71 at 7-8 (N.D. Cal. Dec. 16, 2014) (finding "it would be premature" to decide validity
     under § 101 prior to claim construction for the asserted '169 patent).

28

**B.     OpenTV Sufficiently Pleads Willful Infringement in Its Third Amended Complaint**

To state a claim for willful infringement, a party must provide "a pleading equivalent to 'with knowledge of the patent and of his infringement.'" *Oracle*, 807 F. Supp. 2d at 902 (citations omitted). Accordingly, to plead willful infringement, a party must set forth, "the barest factual assertion of knowledge of an issued patent." *Id.* (citation omitted).

OpenTV's willful infringement allegations are more than adequate under this standard. In particular, OpenTV plausibly supports its allegation that Apple had knowledge of each Asserted Patent prior to the filing of the original Complaint, and for its assertion that Apple acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. Moreover, OpenTV's willful infringement allegations properly rely on Apple's pre- and post-filing conduct.

**1.     OpenTV's Allegations of Apple's Pre-Suit Knowledge of the Asserted Patents and Acts of Willful Infringement Are Sufficient**

In its Third Amended Complaint, OpenTV alleges that Apple had knowledge of the Asserted Patents upon the filing of the original Complaint and, on information and belief, Apple also had knowledge of the asserted patents prior to the filing of the original Complaint. *See* TAC ¶¶ 61, 70, 79, 89, 99. In addition to pleading that Apple had knowledge on information on belief, OpenTV further alleges that Apple had pre-suit knowledge of the '799, '287, '586, and '299 patents "by virtue of the Kudelski Group's role in the market and the impact of the Kudelski Group's portfolio on Apple's products." *Id.* at ¶¶ 61, 79, 89, 99. OpenTV supports these allegations with reference to Apple's participation and OpenTV's prominence in the interactive television industry. *Id.* at ¶¶ 58, 68, 77, 86, 96. After setting forth support for its allegations regarding Apple's knowledge of the Asserted Patents, OpenTV contends:

> Despite this knowledge, on information and belief, Apple continued its infringing activities despite an objectively high likelihood that its activities constituted infringement of a valid patent, and this risk was either known or so obvious that it should have been known to Apple. Thus, on information and belief, Apple's infringement has been, and continues to be, willful and deliberate.

*Id.* ¶¶ 61, 70, 79, 89, 99.

Despite the liberal standard for pleading set by this Court, Apple contends that OpenTV's

1   willful infringement allegations are insufficient and that OpenTV's assertions regarding Apple's

2   knowledge of the Asserted Patents are implausible. *See* Dkt. No. 97 at 18-19. Apple contends

3   "Plaintiffs do not plead facts connecting Apple's alleged knowledge of any asserted patent to any

4   willful infringing acts or otherwise supporting allegations that 'on information and belief, Apple

5   continued its infringing activities despite an objectively high likelihood that its activities constituted

6   infringement of a valid patent.'" *Id*. at 20. Tellingly, nowhere in its motion to dismiss does Apple

7   deny pre-suit knowledge of any Asserted Patent.

8        Courts in the Northern District have held that "[w]here a complaint (1) specifically identifies

9   the accused products, (2) alleges pre-suit knowledge, (3) alleges the infringing acts are willful,

10  intentional and conscious and (4) alleges plaintiff has and will continue to be irreparably harmed by

11  the infringement, that complaint sufficiently states a claim for willful infringement." *See Boundaries*

12  *Solutions Inc. v. CoreLogic, Inc.*, No. 5:14-cv-00761-PSG, 2014 WL 4954017, at *5 (N.D. Cal. Sept.

13  29, 2014) (citing *Emblaze Ltd. v. Apple Inc.*, No. C 11-01079 SBA, 2012 WL 5940782, at *8 (N.D.

14  Cal. Nov. 27, 2012); *Oracle*, 807 F. Supp. 2d at 902-03). OpenTV's Third Amended Complaint

15  meets each of these requirements. Specifically, the Third Amended Complaint (1) identifies Apple's

16  App Store, Software Development Kit (SDK), Store Kit Framework, iAd service, iOS devices (e.g.,

17  iPhone, iPad, and iPod Touch), Mac OS devices, and Apple TV as accused products (TAC ¶¶ 57, 67,

18  76, 85, 95); (2) alleges pre-suit knowledge of each asserted patent (*id*. ¶¶ 61, 70, 79, 89, 99); (3)

19  alleges Apple's infringement "has been, and continues to be, willful and deliberate" (*id*.); and (4)

20  alleges that OpenTV "has suffered and continues to suffer damages and irreparable harm as a result

21  of Apple's past and ongoing infringement" (*id*. ¶¶ 62, 71, 80, 90, 100). Thus, OpenTV's allegations

22  of willful infringement are sufficient.

23        Whereas Apple contends that OpenTV's assertions regarding Apple's pre-suit knowledge of

24  the asserted patents are implausible, OpenTV's allegations far surpass allegations permitted in other

25  cases. For example, in *Jardin v. Datallegro, Inc.*, the Southern District of California considered

26  whether a plaintiff's allegations of willful infringement were sufficient where the plaintiff alleged

27  "defendants has [sic] actual or constructive knowledge of the '874 Patent, yet continue to infringe

28  this patent to this very day." No. 08-cv-1462, 2009 WL 186194, at *7 (S.D. Cal. Jan. 20, 2009). The

PLAINTIFFS' OPPOSITION TO
APPLE'S MOTION TO DISMISS
Case No. 3:14-cv-01622-JST

1    court in *Jardin* observed that the Northern District has held that "what is necessary to prove a claim

2    of willfulness, [is] not whether a plaintiff has sufficiently alleged willful infringement as a pleading

3    matter." *Id.* (citing *Rambus, Inc. v. Nvidia Corp.*, No. C 08-3343 SI, 2008 WL 4911165, at *2 (N.D.

4    Cal. Nov. 13, 2008)). Thus, the court concluded that a plaintiff "need only provide a pleading

5    equivalent to 'with a knowledge of the patent and of his infringement.'" *Id.* (quoting *Sentry Prot.*

6    *Prods. Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005)) (internal quotations omitted).

7    Under this standard, the court found that the plaintiff's pleading "sufficiently alleges Defendants had

8    knowledge of the patent and of their infringement" and denied the defendants' motion for partial

9    summary judgment. *Id.* at *7-8.

10       OpenTV's Third Amended Complaint alleges that Apple had knowledge of each Asserted

11   Patent and of its infringement. *See* TAC ¶¶ 61, 70, 79, 89, 99. And OpenTV did not merely allege

12   that Apple has "actual or constructive knowledge" of the asserted patents in a conclusory fashion;

13   rather, OpenTV alleged pre-suit knowledge on information and belief and set forth specific facts

14   supporting this allegation. *See id.* ¶¶ 58, 68, 77, 86, 96. Nothing more is required of OpenTV at the

15   pleading stage.

16       With respect to the '033 patent, OpenTV further alleges in its Third Amended Complaint that

17   "Apple had actual knowledge of the '033 patent by May 23, 2006, when the '033 patent was

18   identified by Apple to the USPTO during prosecution of the application that led to U.S. Patent No.

19   7,640,305, which is assigned to Apple." TAC ¶ 70. Because Apple itself identified the '033 patent to

20   the USPTO on May 23, 2006, it is reasonably plausible that Apple knew of the '033 patent before

21   May 23, 2006. *See Boundaries Solutions*, 2014 WL 4954017, at *4 ("The FAC alleges that

22   CoreLogic referenced the '957 patent in connection with its own patents. Based on this allegation, it

23   is reasonably plausible that CoreLogic knew of the '957 patent."); *Potter Voice Techs., LLC v. Apple*

24   *Inc.*, No. C 13-1710 CW, 2014 WL 46768, at *3 (N.D. Cal. Jan. 6, 2014) (explaining that Apple's

25   knowledge of patent may be reasonably inferred from its employees' earlier references to patent as

26   prior art); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, Nos. 13-1668, -1669, -1670, -1671,

27   -1672, 2014 WL 4755518, at *2 (D. Del. Sept. 24, 2014) ("A complaint may sufficiently plead a

28   defendant's actual knowledge when 'a plaintiff alleges that a defendant previously filed papers with

PLAINTIFFS' OPPOSITION TO
APPLE'S MOTION TO DISMISS
Case No. 3:14-cv-01622-JST

the PTO identifying the patents as prior art.'" (citation omitted)). Indeed, Apple does not appear to contend in its motion to dismiss that OpenTV's assertions regarding Apple's pre-suit knowledge of the '033 patent are insufficient.

### 2.     OpenTV Properly Relies on the Complaints and Apple's Post-Filing Conduct

Apple mischaracterizes the Federal Circuit's decision in *In re Seagate* as standing for the proposition that "[a] willfulness claim 'must necessarily be grounded in the accused infringer's pre-filing conduct.'" *See* Dkt. No. 97, p. 18 (quoting *In re Seagate Tech..*, *LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007)). Contrary to Apple's assertion, "the Federal Circuit did not explicitly hold that a plaintiff may never obtain redress for willful infringement based on postfiling conduct." *MyMedicalRecords, Inc. v. Jardogs, LLC*, 1 F. Supp. 3d 1020, 1026 (C.D. Cal. 2014). Rather, as the complete quote from *Seagate* makes clear, the Federal Circuit held only that "a willfulness claim *asserted in the original complaint* must necessarily be grounded in the accused infringer's pre-filing conduct." *Seagate*, 497 F.3d at 1374 (emphasis added).

Since *Seagate*, courts have recognized that willful infringement claims can be based on conduct after the filing of a complaint when alleged in a subsequently amended complaint. In *Clouding IP, LLC v. Google Inc.*, for example, the court explained that "for purposes of pleading willful infringement, there appears to be little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-superceded original complaint formally alleging infringement." No. 12-639, 2013 WL 5176702, at *1 (D. Del. Sept. 16, 2013) (finding that plaintiff's first amended complaint adequately pled willful infringement even though plaintiff did not allege pre-suit knowledge of the asserted patents).

Furthermore, OpenTV's willful infringement claim should not be barred on the basis that OpenTV chose not to burden the Court with a preliminary injunction to stop Apple's post-filing activities, as Apple suggests. "[T]here is no *per se* requirement for a plaintiff to file for preliminary injunctive relief before raising a willful infringement claim." *St. Clair Intellectual Prop. Consultants, Inc. v. Palm, Inc.*, No. 06-404, 2009 WL 1649751, at *1 (D. Del. June 10, 2009). In *Seagate*, the Federal Circuit merely suggested that a preliminary injunction "*generally* provides an

1    adequate remedy for combating post-filing willful infringement." *Seagate*, 497 F.3d at 1374

2    (emphasis added). "Because *Seagate* did not create a *per se* bar, the determination of whether a

3    patentee may pursue a claim for willful infringement based on post-filing conduct without seeking a

4    preliminary injunction 'will depend on the facts of each case.'" *DataQuill Ltd. v. High Tech*

5    *Computer Corp.*, 887 F. Supp. 2d 999, 1015 (S.D. Cal. 2011) (quoting *Seagate*, 497 F.3d at 1374).

6        In *MyMedicalRecords, Inc. v. Jardogs, LLC*, the Central District of California held that the

7    Federal Circuit in *Seagate* did not preclude a plaintiff "from establishing a willful-infringement

8    claim based solely on postfiling conduct if the plaintiff does not move for a preliminary injunction."

9    1 F. Supp. 3d at 1026. The court explained:

10

11            [I]f a plaintiff . . . is able to establish the defendant's knowledge of the
              alleged infringement based on a prior, though superseded, complaint,
12            the defendant should not be able to escape liability for conduct
              occurring after the plaintiff files its complaint. Holding otherwise
13            would again give a defendant free rein to willfully infringe a patent of
              which it is now blatantly aware simply because a plaintiff chose not to
14            move for a preliminary injunction. Such a result would eviscerate the
              whole basis behind enhanced damages for willful infringement.

15   *Id.*

16        OpenTV is on solid ground for its allegations of willfulness. Apple's motion to dismiss

17   OpenTV's willful infringement claims with respect to the Asserted Patents should be denied.

18   **V.    CONCLUSION**

19        For the foregoing reasons, OpenTV respectfully requests that this Court deny Apple's motion

20   to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) or 12(c).

21

22

23

24

25

26

27

28

1

2   Dated: January 12, 2015               FINNEGAN, HENDERSON, FARABOW,
                                          GARRETT & DUNNER, LLP
3

4

5                                 By:  */s/ Stephen E. Kabakoff*
                                      Robert F. McCauley (SBN 162056)
6                                     robert.mccauley@finnegan.com
                                      Jacob A. Schroeder (SBN 264717)
7                                     jacob.schroeder@finnegan.com
                                      FINNEGAN, HENDERSON, FARABOW,
8                                       GARRETT & DUNNER, LLP
                                      3300 Hillview Avenue
9                                     Palo Alto, CA  94304-1203
                                      Telephone:(650) 849-6600
10                                    Facsimile: (650) 849-6666

11                                    Gerald F. Ivey (*pro hac vice*)
                                      Smith R. Brittingham IV (*pro hac vice*)
12                                    Elizabeth A. Niemeyer (*pro hac vice*)
                                      John M. Williamson (*pro hac vice*)
13                                    Aliza A. George (*pro hac vice*)
                                      Robert D. Wells (SBN 277903)
14                                    FINNEGAN, HENDERSON, FARABOW,
                                        GARRETT & DUNNER, LLP
15                                    901 New York Avenue, NW
                                      Washington, DC 20001-4413
16                                    Telephone:        (202) 408-4000
                                      Facsimile:        (202) 408-4400
17
                                      Stephen E. Kabakoff (*pro hac vice*)
18                                    FINNEGAN, HENDERSON, FARABOW,
                                        GARRETT & DUNNER, LLP
19                                    3500 SunTrust Plaza
                                      303 Peachtree Street, N.E.
20                                    Atlanta, GA  30308-3263
                                      Telephone:(404) 653- 6400
21                                    Facsimile: (404) 653-6444

22                                    Attorneys for Plaintiffs
                                      OpenTV, Inc. and Nagravision, SA
23

24

25

26

27

28