George A. Riley (S.B. #118304) griley@omm.com
Luann L. Simmons (S.B. #203526) lsimmons@omm.com
Melody Drummond Hansen (S.B. #278786) mdrummondhansen@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:    (415) 984-8700
Facsimile:     (415) 984-8701

Ryan K. Yagura (S.B. #197619) ryagura@omm.com
Xin-Yi Zhou (S.B. #251969) vzhou@omm.com
Brian M. Cook (S.B. #266181) bcook@omm.com
Kevin Murray (S.B. #275186) kmurray2@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:    (213) 430-6000
Facsimile:     (213) 430-6407

*Attorneys for Defendant*
**APPLE INC.**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO

| | |
|---|---|
| OpenTV, Inc., and Nagravision, SA,<br><br>          Plaintiffs and Counterdefendants,<br><br>   v.<br><br>Apple Inc.,<br><br>          Defendant and Counterplaintiff. | Case No. 3:14-cv-01622-JST<br><br>**APPLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6) OR 12(c)**<br><br>Date:         February 19, 2015<br>Time:        2:00 p.m.<br>Judge:       Honorable Jon S. Tigar<br>Courtroom: 9, 19th Floor |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1
II. ARGUMENT ....................................................................................................................... 2
    A. The '799 Patent Claims Ineligible Subject Matter and Is Invalid .......................... 2
        1. Plaintiffs' Arguments Relating to Wink and the Named Inventors Are Irrelevant and Should Be Stricken ........................................ 2
        2. Claims 1-12 Fail the First Step of the *Alice* Test ....................................... 3
        3. The Pen-and-Paper Test Confirms That Claims 1-12 Are Directed to an Abstract Idea ................................................................... 6
        4. System Claims 1-2 Lack Any Inventive Concept and Fail the Second Step of the *Alice* Test................................................................... 7
        5. Method Claims 3-12 Lack Any Inventive Concept and Fail the Second Step of the *Alice* Test................................................................... 8
        6. Apple's Analysis Is Proper and Its Motion Is Ripe..................................... 9
    B. Plaintiffs Fail to Plausibly Support Willfulness, Arguing Pre-Suit Knowledge and Specific Factual Allegations Supporting Willfulness Are Not Required .................................................................................................... 11
III. CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

Page

**CASES**

*Accenture Global Servs. v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) .................................................................................................. 5, 9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ............................................................................................................ passim

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Can.*,
  687 F.3d 1266 (Fed. Cir. 2012) ................................................................................................ 5, 10

*Bascom Research LLC v. Facebook, Inc.*,
  Case No. 12-6293-SI, 2013 WL 968210 (N.D. Cal. Mar. 12, 2013) ......................................... 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................... 14

*Bilski v. Kappos*,
  561 U.S. 593 (2012) ....................................................................................................................... 8

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ..................................................................................................... 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
  12:cv-2501, 12-cv-6960 and 12-cv7640, 2014 WL 7272219 (Fed. Cir. Dec. 23,
  2014) ........................................................................................................................ 6, 8, 10, 12

*CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*,
  558 F. App'x 988 (Fed. Cir. 2014) ............................................................................................ 5, 9

*DataQuill Ltd. v. High Tech Computer Corp.*,
  887 F. Supp. 2d 999 (S.D. Cal. 2011) ....................................................................................... 14

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ................................................................................................. 5, 6

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ....................................................................................................................... 5

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ..................................................................................................... 5

*Eclipse IP LLC v. McKinley Equip. Corp.*,
  No. SACV 14-742-GW(AJWx), 2014 2014 WL 4407592 (C.D. Cal. Sept. 4,
  2014) ............................................................................................................................................. 12

# TABLE OF AUTHORITIES
## (continued)

Page

*Fuzzysharp Techs. Inc. v. NVIDIA Corp.*,
   No. 12-cv-06375-JST, 2013 WL 2249707 (N.D. Cal. Apr. 18, 2013) ............................. 13, 15

*Genetic Techs. Ltd. v. Agilent Techs., Inc.*,
   24 F. Supp. 3d 922 (N.D. Cal. 2014) ....................................................................................... 11

*In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*,
   2:13-cv-00640 RJS and 2:14-md-02510 RJS, 2014 WL 7156722 (Fed. Cir.
   Dec. 17, 2014) ............................................................................................................................ 6

*In re Roslin Inst.*,
   750 F.3d 1333 (Fed. Cir. 2014) ................................................................................................. 5

*Jardin v. Datallegro, Inc.*,
   No. 08-cv-1462, 2009 WL 186194 (S.D. Cal. Jan. 20, 2009) .................................................. 13

*LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*,
   No. 11-CV-06173 YGR, 2012 WL 1965878 (N.D. Cal. May 30, 2012) .................................. 14

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
   Case No. 2:13-CV-655, 2014 2014 WL 4364848 (E.D. Tex. Sept. 2, 2014) ............................. 7

*Mayo Collaborative Serv. v. Prometheus Lab., Inc.*,
   132 S. Ct. 1289 (2012) ............................................................................................................. 10

*Open Text S.A. v. Alfresco Software Ltd.*,
   Case No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ............................. 11

*OpenTV, Inc. v. Netflix Inc.*,
   Case No. 14-cv-01525-RS, 2014 WL 7185921 (N.D. Cal. Dec. 16, 2014) ............................. 12

*Oracle Corp. v. DrugLogic, Inc.*,
   807 F. Supp. 2d 885 (N.D. Cal. 2011) ..................................................................................... 14

*PerkinElmer, Inc. v. Intema Ltd.*,
   496 F. App'x 65 (Fed. Cir. 2012) .............................................................................................. 5

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................................................. 3

*Planet Bingo, LLC v. VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) ............................................................................... 5, 7, 10

*Radware, Ltd. v. A10 Networks, Inc.*,
   No. C-13-02021-RMW, 2013 WL 5373305 (N.D. Cal. Sept. 24, 2013) ................................. 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Robert Bosch Healthcare Sys., Inc. v. Express MD Solutions, LLC*,
    No. C 12-00068 JW, 2012 WL 2803617 (N.D. Cal. July 10, 2012) ........................................ 14

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ..................................................................................................... 2

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    Case No. C12-6467 MMC, ECF 442 at 8 (N.D. Cal. Jan. 20, 2015) ...................................... 11

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ................................................................................... 3, 4, 6, 10

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    No. 11-cv-06638 RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012) ................................ 13, 15

**STATUTES**

35 U.S.C. § 112 ................................................................................................................................ 8

I.      INTRODUCTION

**The '799 Patent**

Claims 1-12 of U.S. Patent No. 5,689,799 (the "'799 patent") are directed to the abstract idea of using code names to identify information relating to buyers and vendors in a business transaction. Indeed, Plaintiffs describe the "idea embodied in the '799 Patent" in nearly the same way: "send[ing] identifiers … to purchase a product or service, without the user having to send sensitive or confidential data over an unsecure communication channel." ECF No. 101 at 10.

Plaintiffs' arguments that this abstract idea is patentable rely on misapplications of the law and mischaracterizations of the facts. First, Plaintiffs argue the '799 patent claims are not directed to an abstract idea because the claims include additional limitations implementing the idea. This argument fails because it improperly conflates the first and second steps of the *Alice* test. The recitation of specific claim elements—which are evaluated for an "inventive concept" under the second step of the *Alice* test—is insufficient to overcome a determination that the claim is directed to an abstract idea under the first step of the *Alice* test. Second, Plaintiffs improperly rely on functional "component" limitations and conventional method steps—which are devoid of any innovation—to fabricate a nonexistent "inventive concept." Similarly, to give the claims a contrived "technical context," Plaintiffs rely on nonexistent claim limitations, such as an "interactive information system" and a "computer network." Plaintiffs' arguments, even if taken as true, cannot overcome the fatal flaws of the '799 patent claims. The Federal Circuit has repeatedly rejected similar arguments by finding that applying an abstract idea to a particular technical environment is not patentable. Apple has met its burden of establishing the invalidity of claims 1-12, and Plaintiffs have not presented any reason why any claim passes either step of the *Alice* test.

Plaintiffs also rely on unauthenticated webpages printed by counsel to show alleged technical contributions made to the interactive television industry by the patent's original assignee, Wink Communications, and named inventors. Even if this information were admissible, relevant, and true, Wink's accomplishments do not give Plaintiffs the right to monopolize the practice of an abstract idea. And the inventors' alleged success in the television

industry does not justify allowing Plaintiffs to assert an invalid patent against anyone, much less against Apple's products and services in an entirely different industry. Plaintiffs' arguments based on Wink are wholly irrelevant to Apple's motion.

**Plaintiffs' Willful Infringement Claims**

Plaintiffs fail to plausibly state a claim for willful infringement for any asserted patent. Apple showed in its Motion that Plaintiffs' claims of pre-suit knowledge for four asserted patents fail because they are based on mere speculation that Apple "would be aware" of the Kudelski Group's patent portfolio and prior litigation. *See* ECF No. 97 at 18-19. In response, Plaintiff ignores this District's decisions and relies on precedent from another district that did not address allegations that were based on speculation of knowledge of a patent portfolio or prior litigation. ECF No. 101 at 22-23. Apple's motion also established that Plaintiffs are not permitted to rely on notice through the Complaint and Apple's post-filing conduct where Plaintiffs have not sought a preliminary injunction. ECF No. 97 at 19-20. In response, Plaintiffs do not identify any reason to deviate from the normal rule in this case. ECF No. 101 at 24-25. Finally, Apple established that Plaintiffs' allegations of willful infringement for all asserted patents were bare recitations of claim elements. ECF No. 97 at 20-21. Plaintiffs do not dispute this, but merely argue bare allegations are sufficient. ECF No. 101 at 21-23. Plaintiffs' willfulness claims therefore should be dismissed.

II. **ARGUMENT**

   A. **The '799 Patent Claims Ineligible Subject Matter and Is Invalid**

   1. **Plaintiffs' Arguments Relating to Wink and the Named Inventors Are Irrelevant and Should Be Stricken**

Attempting to create a "technical context" for the '799 patent, Plaintiffs rely on inadmissible evidence relating to the inventors and original assignee of the '799 patent. *Id.* at 101 at 3-5. These arguments should be stricken for at least three reasons.

First, "[i]n ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Plaintiffs'

descriptions of Wink and the named inventors are not stated in the '799 patent[1] or pled in the complaint, and they should not be considered in evaluating Apple's motion to dismiss.

Second, Plaintiffs' arguments relating to Wink and the inventors are based on a book excerpt and webpages printed from third-party websites by Plaintiffs' counsel, who does not profess to have any actual knowledge regarding the accuracy of the information contained therein. *See* ECF No. 101-1 ¶¶ 1-5, 7-12. Many of these webpages appear to be self-serving marketing materials published by Wink before it ceased operations. *See id.* at Exs. 2-3 and 5-10. This unauthenticated hearsay evidence is inadmissible and should be stricken from the record.

Third, and most importantly, Wink's alleged accomplishments are wholly irrelevant to a § 101 analysis. A patent eligibility analysis requires the Court to "examine the [patent] claims because claims are the definition of what a patent is intended to cover." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"). The claims of the '799 patent define the scope of Plaintiffs' patent rights, and those claims fail to recite any inventive technology. A company cannot patent ineligible subject matter regardless of its technical contributions to the relevant industry. Thus, Plaintiffs' attempt to import a technical context for the challenged claims from work allegedly done by Wink or the inventors must be rejected.

### 2.  Claims 1-12 Fail the First Step of the *Alice* Test

As explained in Apple's motion, claims 1-12 of the '799 patent are directed to the abstract idea of using code names, called "identifiers," to identify information relating to buyers and vendors in a business transaction. *See, e.g.*, ECF No. 97 at 2, 8. Plaintiffs elevate form over substance by arguing that because Apple used different words to describe this idea, Apple did not identify a "single" abstract idea. *See* ECF No. 101 at 1, 9-10. But Plaintiffs fail to identify any material difference between "sellers" and "vendors," between "buyers" and "users," or between different descriptions of the claimed idea, much less any difference that affects the *Alice* analysis.

---

[1] The '799 patent is attached to Plaintiffs' original complaint as Exhibit A (ECF No. 1-1 at 2-30).

1    Indeed, Plaintiffs present a nearly identical description—in all material respects—of the "idea
2    embodied in the '799 Patent." *See id.* at 10 (stating that the '799 patent is directed to "send[ing]
3    identifiers … to purchase a product or service, without the user having to send sensitive or
4    confidential data over an unsecure communication channel").

5    Plaintiffs' argument that claims 1-12 "are not limited to only" an abstract idea because
6    they "recite multiple, specific limitations" and "specific combinations of claim elements" is
7    irrelevant and baseless. *See id.* at 9-10. This argument relies on a misapplication of the *Alice*
8    test. The first step of the *Alice* test evaluates whether patent claims are **directed to** an abstract
9    idea; it does not require claims to recite only an abstract idea. *See Alice Corp. Pty. Ltd. v. CLS*
10   *Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). In *Alice*, the Supreme Court found a claim reciting a
11   four-step method for exchanging financial obligations between parties to be directed to an
12   abstract idea, even though the claim recites multiple, specific steps to implement that idea. *See*
13   *id.* at 2352 n.2 (reciting limitations such as "creating a shadow credit record and a shadow debit
14   record for each stakeholder party"). In *Ultramercial*, the Federal Circuit similarly found an
15   eleven-step method claim to be directed at an abstract idea, even though the claim recites specific
16   steps relating to exchanging a media item for viewing advertisement. *See* 772 F.3d at 712. The
17   claims at issue in both *Alice* and *Ultramercial* recite combinations of elements beyond simply an
18   abstract idea, but those additional elements are considered under the second step of the *Alice* test
19   to determine whether they add an "inventive concept." The inclusion of additional elements does
20   not overcome a determination that the claim is directed to an abstract idea, as is the case here, in
21   the first step of the test.

22   Plaintiffs fail to identify any support for their position that the recitation of additional
23   claim elements allows claims 1-12 to pass the first step of the *Alice* test. Plaintiffs rely on two
24   cases, both of which actually address the second part of the test. In *Diamond v. Diehr*, a thirty-
25   three-year-old case dealing with rubber curing technology, the Supreme Court found the
26   underlying mathematical formula used for curing rubber to be abstract, but affirmed patentability
27   because the claims are "drawn to an industrial process for the molding of rubber products." 450
28   U.S. 175, 191-93 (1981). Under the modern *Alice* framework, the *Diehr* analysis essentially

confirmed patentability by finding an inventive concept in the application of an idea, not because the underlying mathematical formula is non-abstract. *See id.* Likewise, in *DDR Holdings, LLC v. Hotels.com, L.P.*, the Federal Circuit affirmed a patent based on the second step of the *Alice* test by finding that the claims provided "an inventive concept for resolving [a] particular Internet-centric problem." 773 F.3d 1245, 1258-59 (Fed. Cir. 2014).[2] Neither case supports the proposition that the first step of the *Alice* test requires a claim to recite only an abstract idea.

Plaintiffs' argument that claims 1-12 are not abstract because they address a "technological problem" similarly fails. *See* ECF No. 101 at 11-13. The *DDR* case is clearly distinguishable because it involved a patent addressing a uniquely Internet-based technical problem—the look and feel of websites—that has no analog in the non-technical world. *See DDR*, 773 F.3d at 1258. In contrast, the claims of the '799 patent present neither a technological problem nor a technological solution. Plaintiffs describe the "idea embodied in the '799 Patent" as follows:

> The '799 Patent sought to provide systems and methods whereby ***a user could send identifiers*** in an interactive information system, for example, to purchase a product or service, ***without the user having to send sensitive or confidential data over an unsecure communication channel*** in the computer network.

ECF No. 101 at 10 (emphasis added). The problem identified by Plaintiffs—the need to protect sensitive or confidential data in business transactions—has existed for centuries and applies to all business communications, not just to "interactive information systems" that communicate over "a

---

[2] With the exception of overturned cases, *DDR* is the only Federal Circuit decision since the 2012 *Mayo* decision affirming patentability in a § 101 challenge. During the same time span, the Federal Circuit has invalidated claims under § 101 in at least eleven cases, including: *Bancorp Servs., LLC v. Sun Life Assur. Co. of Can.*, 687 F.3d 1266 (Fed. Cir. 2012); *PerkinElmer, Inc. v. Intema Ltd.*, 496 F. App'x 65 (Fed. Cir. 2012); *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013); *CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988 (Fed. Cir. 2014); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014); *In re Roslin Inst.*, 750 F.3d 1333 (Fed. Cir. 2014); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005 (Fed. Cir. 2014); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014); *Ultramercial*, 772 F.3d at 714; *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 2:13-cv-00640 RJS and 2:14-md-02510 RJS, 2014 WL 7156722 (Fed. Cir. Dec. 17, 2014); and *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 12:cv-2501, 12-cv-6960 and 12-cv7640, 2014 WL 7272219 (Fed. Cir. Dec. 23, 2014).

computer network."[3] And the idea of using "identifiers" to protect such information is far from a technological solution. In *Alice*, the Supreme Court found the need to "mitigate settlement risk" to be a non-technological problem, and the use of "a third party intermediary" to be a non-technological solution. *Alice*, 134 S. Ct. at 2359. Likewise, neither the problem identified by Plaintiffs nor the alleged solution is unique to any technology. Rather, the use of "identifiers" to identify sensitive information is a "fundamental economic practice" and a basic "building block of human ingenuity" that cannot be patented. *Id.* at 2354-6.

### 3. The Pen-and-Paper Test Confirms That Claims 1-12 Are Directed to an Abstract Idea

The "Alice and Bob" example provided by Apple further confirms that claims 1-12 are directed to an abstract idea. *See* ECF No. 97 at 10-12. Plaintiffs' argument that certain limitations cannot literally be met by a manual process misses the point of the pen-and-paper test. *See* ECF No. 101 at 17-18.

Plaintiffs argue that system claims 1 and 2 require physical components that do not exist in Apple's pen-and-paper example. *See* ECF No. 101 at 17. But "[t]he fact that a computer 'necessarily exist[s] in the physical, rather than purely conceptual, realm' … is beside the point." *Alice*, 134 S. Ct. at 2358. The pen-and-paper test serves as a barometer for courts to gauge the abstractness of an idea embodiment by a claim, not to evaluate whether each limitation can literally exist in a non-computer form. For example, in *Planet Bingo*, the Federal Circuit applied the pen-and-paper test to claims reciting "computer-aided … systems for managing the game of bingo." 576 F. App'x at 1006. In *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, Judge Bryson applied the same test to evaluate the abstract nature of a claim reciting a "computer program product." Case No. 2:13-CV-655, 2014 WL 4364848, at *2 (E.D. Tex. Sept. 2, 2014). In these cases, the courts did not require "computer-aided … systems" and a "computer program

---

[3] Contrary to Plaintiffs' description, claims 1-12 recite neither an "interactive information system" nor a "computer network." '799 Patent at claims 1-12. In fact, the '799 patent does not disclose communications through computer networks, but describes only television networks and point-to-point telephone dial-up connections. *See* '799 patent at 1:39-43, 9:61-66, 10:23-27, 24:58-61, 25:19-20, and 25:36-38.

product" to literally exist on pen and paper, but used the test to confirm the abstractness of the underlying ideas. Likewise, even if the recited "components" exist in physical form, there can be no question that the claimed functionalities associated with those "components"—the organization and communication of information—can be performed without any specific hardware. Thus, system claims 1-2 are directed to an abstract idea.

For method claims 3-12, Plaintiffs argue that the steps of "storing," "routing," and "transmitting" cannot be performed with pen and paper. *See* ECF No. 101 at 18. This argument should be summarily rejected because "[t]he concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Content Extraction*, 2014 WL 7272219, at *3. In addition, Plaintiffs' argument relies on an unsupported interpretation of "storing," "routing," and "transmitting" as requiring computer operations—an interpretation that contradicts Plaintiffs' own claim construction positions. *See* ECF No. 95-1 at 16-23. Plaintiffs' interpretation, even if correct, cannot save the patentability of claims 3-12 because it is well settled that merely applying an abstract idea to a computer environment does not make the claimed idea any less abstract. *See Alice*, 134 S. Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2012) (the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment'")).

### 4. System Claims 1-2 Lack Any Inventive Concept and Fail the Second Step of the *Alice* Test

System claims 1 and 2 add three functional limitations—a "provider component," a "reception component," and a "response collector component"—to the claimed idea. The parties agree that, to the extent there is any structure associated with these limitations, they refer only to conventional components. *See* ECF No. 97 at 15-17; ECF No. 101 at 14-15. Thus, under either party's interpretation of the "component" terms, they fail to add an inventive concept.

Plaintiffs contend that the three "component" terms should be given their "plain and ordinary meaning." *See* ECF 95-1 at 16-20. Applying the plain meaning of these terms, Plaintiffs cannot show how adding three generic "components" is inventive. For example,

Plaintiffs have not advocated for any construction tying the "provider component" to a new broadcast machine, a "reception component" to a new signal receiver, or a "response collector component" to a novel computer design or algorithm.  To the contrary, Plaintiffs readily admit that these components use "a combination of conventional mechanisms."  ECF No. 101 at 14.

Apple contends that the three "components" are functional limitations that should be construed under 35 U.S.C. § 112, ¶ 6 as means-plus-function terms.[4]  *See* ECF 95-1 at 16-20.  Under 35 U.S.C. § 112, ¶ 6, the scope of these claim terms are limited to "corresponding structure, material, or acts described in the specification and equivalents thereof."  Apple has shown that the structures corresponding to all three "component" terms comprise only convention hardware equipment.  *See* ECF No. 97 at 15-17.  The addition of these conventional components do not transform claims 1 and 2 into a patentable invention.  *See, e.g.*, *Accenture Global Servs.*, 728 F.3d at 1338, 1341 (invalidating claims that recite "data component," "client component," and other hardware limitations); *CyberFone Sys.*, 558 F. App'x at 992-93 (finding a "conventional telephone" used "in a conventional manner" insufficient to pass step two of the *Alice* test).

Plaintiffs seek to apply an outdated standard for patentability—that any tie to hardware renders abstract ideas patentable.  That view was expressly rejected by the Supreme Court in *Alice*, and it therefore cannot save the patentability of claims 1 and 2.  *See Alice*, 134 S. Ct. at 2360 (finding "generic computer components configured to implement the same [abstract] idea" insufficient to support patentability).

### 5. Method Claims 3-12 Lack Any Inventive Concept and Fail the Second Step of the *Alice* Test

Similarly, Plaintiffs fail to identify an inventive concept for method claims 3-12.  Rather than addressing the actual claim language, Plaintiffs attempt to fabricate an inventive concept by relying on non-existent claim limitations.  For example, Plaintiffs argue that claim 3 describes "a specific method that can be performed by a single entity … over an unsecure communication

---

[4] Because the '799 patent issued before the enactment of the America Invents Act of 2011 ("AIA"), pre-AIA 35 U.S.C. § 112 governs.

1  channel in an interactive information system." ECF No. 101 at 15. But claim 3 does not recite
2  any language limiting the claimed method to a single entity, an unsecure communication channel,
3  or an interactive information system. *See* '799 patent at claim 3. And even if Plaintiffs'
4  arguments were true, the law is clear that applying an abstract idea to "a particular technological
5  environment" is still not patentable. *Mayo Collaborative Serv. v. Prometheus Lab., Inc.*, 132 S.
6  Ct. 1289, 1293 (2012).

7  Plaintiffs do not dispute that the method claims of the '799 patent fail the machine-or-
8  transformation test, as explained in Apple's motion. *See* ECF No. 97 at 13. Numerous courts
9  have found the machine-or-transformation test to be "a useful and important clue" in the § 101
10 analysis. *Ultramercial*, 772 F.3d at 716; *Bancorp*, 687 F.3d at 1278. Claims 3-12 fail the second
11 step of the *Alice* test because all recited steps—alone or in combination—are conventional and
12 not tied to any specific application. *See Mayo*, 132 S. Ct. at 1292 ("[S]imply appending
13 conventional steps … to laws of nature, natural phenomena, and abstract ideas cannot make those
14 laws, phenomena, and ideas patentable.").

### 6. Apple's Analysis Is Proper and Its Motion Is Ripe

16 Plaintiffs present three final arguments regarding alleged flaws in Apple's argument in an
17 attempt to save the claims of the '799 patent. Each of Plaintiffs' arguments fails as contrary to
18 the law and premised on mischaracterizations of the facts.

19 First, Plaintiffs argue Apple's motion should be denied because Apple allegedly grouped
20 method and system claims in its analysis. *See* ECF No. 101 at 16-17. To the contrary, Apple's
21 motion addressed each system and method claim separately. *See* ECF No. 97 at 11-17. But even
22 if Plaintiffs' contention were true, there is nothing improper about grouping the system and
23 method claims of the '799 patent because there is no technological difference between those
24 claims. In evaluating § 101 motions, courts routinely group claims in situations where
25 "addressing each claim of the asserted patents was unnecessary." *Content Extraction*, 2014 WL
26 7272219, at *4 (affirming invalidation of 242 claims based on two representative claims); *see*
27 *also Alice*, 134 S. Ct. at 2360 ("Put another way, the system claims are no different from the
28 method claims in substance."); *Planet Bingo*, 576 F. App'x at 1007 ("[W]e agree with the district

1  court that there is no meaningful distinction between the method and system claims or between
2  the independent and dependent claims."). Plaintiffs cannot identify any meaningful distinction
3  between the system and method claims of the '799 patent that would justify a different outcome
4  in the validity determination.
5        Second, Plaintiffs' argument that Apple failed to consider the claim elements in an
6  "ordered combination" (ECF No. 101 at 18-20) similarly fails. Apple analyzed all claim
7  limitations—individually and in relationship with each other—to show that claims 1-12 merely
8  add conventional steps and components to an abstract idea. *See* ECF No. 97 at 13-17. Plaintiffs
9  have not identified any combination of limitations that represents an inventive concept. For
10 example, claim 3 recites four steps—"storing," "associating," "receiving," and "transmitting"
11 data—that are unquestionably conventional. *See id.* at 9-10, 13-14. There is also no plausible
12 argument that the combination of these four simple steps would somehow transform the claim
13 into a patentable invention. *See id.* And Plaintiffs' argument that a combination of conventional
14 elements can be non-obvious "conflate[s] the analysis of patent eligible subject matter under
15 § 101 with analysis of novelty and non-obviousness under §§ 102 and 103." *Genetic Techs. Ltd.*
16 *v. Agilent Techs., Inc.*, 24 F. Supp. 3d 922, 929-30 (N.D. Cal. 2014). Similarly, Plaintiffs'
17 argument that Apple "d[id] not identify any prior art" (ECF No. 101 at 19) has no relevance to a
18 patent eligibility challenge, and this exact argument has been rejected by several courts in this
19 District. *See id.*; *Synopsys, Inc. v. Mentor Graphics Corp.*, Case No. C12-6467 MMC, ECF 442
20 at 8 (N.D. Cal. Jan. 20, 2015) (finding patent owner's "reliance on a lack of prior art is
21 misplaced" in responding to a § 101 motion).
22       Finally, Plaintiffs' attempt to delay the Court's decision on Apple's patent eligibility
23 challenge until after claim construction should also be rejected. Judge Donato of this District
24 explained that "a number of courts in this District have found patents invalid at the pleading stage
25 and prior to formal claim construction." *Open Text S.A. v. Alfresco Software Ltd.*, Case No. 13-
26 cv-04843-JD, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014); *see also OpenTV, Inc. v.*
27 *Netflix Inc.*, Case No. 14-cv-01525-RS, 2014 WL 7185921, at *7-8 (N.D. Cal. Dec. 16, 2014)
28 (invalidating two patents-in-suit under § 101 before claim construction). The Federal Circuit has

1 endorsed the practice of considering § 101 motions before claim construction. *See, e.g.*, *Content Extraction*, 2014 WL 7272219, at *5 (finding pre-claim construction grant of motion to dismiss proper). Delaying the patent eligibility analysis is necessary "only where claim construction disputes are relevant to the § 101 question." *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742-GW(AJWx), 2014 WL 4407592, at *5 (C.D. Cal. Sept. 4, 2014). Plaintiffs fail to identify any claim construction dispute that, if resolved in Plaintiffs' favor, can render any asserted claim patentable. To the contrary, as Apple has shown, claims 1-12 of the '799 patent are invalid under either party's proposed construction. Therefore, Apple's motion should be resolved before claim construction because it would eliminate the need for the Court to construe the language of an invalid patent.[5]

### B. Plaintiffs Fail to Plausibly Support Willfulness, Arguing Pre-Suit Knowledge and Specific Factual Allegations Supporting Willfulness Are Not Required

To allege pre-suit knowledge of the '287, '799, '586, and '229 patents, Plaintiffs merely speculate that Apple "*would be aware*" of the patents based on the alleged prominence of the Kudelski Group's portfolio, "the Kudelski Group's role in the market and the impact of the Kudelski Group's portfolio on Apple's products," and prior litigation with a different party, Cisco Systems. *See, e.g.*, ECF No. 92 ¶¶ 58, 61, 68, 70, 77, 79, 86, 89, 96, and 99 (emphasis added). Plaintiffs' theories of inferred pre-suit knowledge based on presumed awareness of a patent portfolio or prior litigation are insufficient under this District's precedent. *See* ECF No. 97 at 18-19. In response, Plaintiffs argue only that their allegations "surpass allegations permitted in other cases." ECF No. 101 at 22-23. Plaintiffs rely, however, on a non-binding decision from a different district that did not address the same theories on which Plaintiffs rely here. *Id.*, *citing Jardin v. Datallegro, Inc.*, No. 08-cv-1462, 2009 WL 186194, at *7 (S.D. Cal. Jan. 20, 2009). Plaintiffs fail to respond to this District's recent precedent, cited by Apple, that shows that Plaintiffs' *particular* allegations fail in this District. *See* ECF No. 97 at 18-19, *citing*, *e.g.*, *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. 11-cv-06638 RS, 2012 WL 1831543, at *1

---

[5] Invalidating the '799 patent would eliminate two of the top ten claim construction disputes presented to the Court. *See* ECF No. 95 at 1.

(N.D. Cal. May 18, 2012), *Radware, Ltd. v. A10 Networks, Inc.*, No. C-13-02021-RMW, 2013 WL 5373305, at *3 (N.D. Cal. Sept. 24, 2013), and *Fuzzysharp Techs. Inc. v. NVIDIA Corp.*, No. 12-cv-06375-JST, 2013 WL 2249707, at *2 (N.D. Cal. Apr. 18, 2013). Plaintiffs' "would be aware" allegations, therefore fail to sufficiently show pre-suit knowledge, and this alone warrants dismissal of their willfulness claims for four asserted patents.[6]

Plaintiffs then rely on earlier Complaints to accuse Apple's post-filing conduct. As Apple's motion showed, Plaintiffs cannot rely on Apple's post-filing conduct alone because "a patentee must have a good faith basis for alleging willful infringement in the original complaint" and usually is not permitted to accrue enhanced damages for post-filing conduct where (as here) Plaintiffs did not seek a preliminary injunction. *See* ECF No. 97 at 19-20, *citing, e.g.*, *Vasudevan*, 2012 WL 1831543, at *5. Plaintiffs do not address *Vasudevan*, but instead argue that they may accuse post-filing conduct based on holdings from other districts. ECF No. 101 at 24-25.[7] Plaintiffs argue that "the determination of whether a patentee may pursue a claim for willful infringement based on post-filing conduct without seeking a preliminary injunction 'will depend on the facts of each case.'" ECF No. 101 at 25 (*citing DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1015 (S.D. Cal. 2011)). In *LML Holdings*, however, the Northern District rejected a similar argument. The court dismissed the plaintiff's willfulness claims, noting that although "technically a party may not be precluded from relying solely upon post-filing conduct to support a claim of willfulness," the plaintiff "failed to allege facts that distinguish this case from the ordinary case where 'willfulness will depend on an infringer's prelitigation conduct.'" *LML Holdings, Inc. v. Pac. Coast Distrib. Inc.*, No. 11-CV-06173 YGR, 2012 WL 1965878, at *5 (N.D. Cal. May 30, 2012). Like the plaintiff in *LML Holdings*, Plaintiffs fail to

---

[6] Plaintiffs argue, "Tellingly, nowhere in its motion to dismiss does Apple deny pre-suit knowledge of any Asserted Patent." ECF No. 101 at 22. It is Plaintiffs' obligation to establish pre-suit knowledge, not Apple's obligation to deny it. Nevertheless, Apple's denials are in its Answer. *See, e.g.*, ECF No. 96 ¶¶ 58, 61, 77, 79, 86, 89, 96, and 99.

[7] Plaintiffs also cite *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 902 (N.D. Cal. 2011), in other sections of its brief. (ECF No. 101 at 2, 21, 22.) But the Northern District has found *Oracle* inapplicable to motions to dismiss a plaintiff's willfulness claim, in part because *Oracle* addressed willful infringement in a defendant's counterclaim rather than a plaintiff's complaint. *See Robert Bosch Healthcare Sys., Inc. v. Express MD Solutions, LLC*, No. C 12-00068 JW, 2012 WL 2803617, at *3 (N.D. Cal. July 10, 2012).

1 distinguish this case from ordinary ones requiring willfulness to be based on pre-litigation
2 conduct. Plaintiffs' claims based on post-filing conduct should be dismissed.
3       Finally, Apple showed that for all asserted patents, including the '033 patent, Plaintiffs rely on the kind of "bare recitation of the required legal elements" that has been found insufficient to allege willful patent infringement. *See* ECF No. 97 at 20-21, *citing, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *Bascom Research LLC v. Facebook, Inc.*, Case No. 12-6293-SI, 2013 WL 968210, at *6 (N.D. Cal. Mar. 12, 2013), *Fuzzysharp*, 2013 WL 2249707, at *2, and *Vasudevan*, 2012 WL 1831543, at *5.) In response, Plaintiffs do not dispute that the Third Amended Complaint includes bare recitations of required elements. Instead, Plaintiffs argue that bare allegations of knowledge and continued infringement are sufficient for the pleading stage. ECF No. 101 at 22-23. Plaintiffs' proposed approach would "invite claims of willfulness in every patent suit, as a matter of course, and regardless of the facts." *See, e.g.*, *Vasudevan*, 2012 WL 1831543, at *5. Plaintiffs' bare recitations of claim elements therefore should be rejected, and its willfulness claims for all asserted patents should be dismissed.

### III. CONCLUSION

Apple respectfully requests that the Court dismiss Plaintiffs' claim of infringement of the '799 patent and all claims of willful infringement in Plaintiffs' Third Amended Complaint.

Dated: January 28, 2015            O'MELVENY & MYERS LLP

By:   *Luann L. Simmons*

Attorneys for Defendant APPLE INC.