UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPENTV, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE, INC.,<br><br>    Defendant. | Case No. 14-cv-01622-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Re: Dkt. No. 97 |

Defendant Apple, Inc. ("Apple") moves to dismiss Plaintiffs OpenTV, Inc.'s and Nagravision, SA's ("OpenTV") Third Amended Complaint ("TAC"). Apple argues that all of OpenTV's patent infringement claims related to U.S. Patent No. 5,689,799 ("the '799 Patent") are invalid because the '799 Patent's claims are drawn to patent-ineligible subject matter. Apple also argues that OpenTV has failed to state a claim for willful infringement as to all five of OpenTV's asserted patents. For the reasons explained below, the Court GRANTS the motion as to the '799 Patent infringement claims and DENIES the motion as to the willful infringement claims.

**I. BACKGROUND**

OpenTV alleges that Apple infringes five patents related generally to "the fields of access, selection, control, security, and delivery of digital content . . . over broadband networks to connected devices." TAC ¶ 46. OpenTV further alleges that Apple willfully infringed all five patents. *See* TAC ¶¶ 61, 70, 79, 89, 99.

The '799 Patent is titled, "Method and Apparatus for Routing Confidential Information." *See* '799 Patent. In the specification, the invention is summarized as "a method and apparatus [that] allows information including confidential information to be communicated to a proper vendor via an interactive information system without requiring the user to send confidential

information over unsecure communication lines." *Id.* 1:66-2:3. According to the specification, the "interactive information system" uses "identifiers" to code a variety of "user," "vendor," and "application" information so that the information need not be directly transmitted between user and vendor via unsecure communication lines. *Id.* 2:4-10.

Claims 1-12 of the '799 Patent are at issue. Claims 1 and 3 are independent system and method claims, respectively. Claim 1 recites:

> 1. An [sic] system for routing confidential user information to a vendor comprising:
>
> a provider component for broadcasting an application identifier to at least one reception component;
>
> a reception component for storing at least one user identifier, receiving and storing the application identifier, assembling user response information, and transmitting to a response collector the application identifier received and the user response information assembled; and
>
> a response collector component for storing the application identifier and vendor routing information, associating the application identifier with the vendor routing information, receiving the application identifier and user response information from the reception component, and transmitting the user response information to the vendor associated with the application identifier received.

Claim 2 depends on claim 1, and requires the system components to also transmit, store, associate, and receive "at least one user identifier."

Claim 3 recites:

> 3. A method of routing confidential user information to a supplier comprising:
>
> storing an application identifier and vendor routing information;
>
> associating the vendor routing information with the application identifier;
>
> receiving an application identifier and user response information; and
>
> transmitting at least a portion of the user response information received responsive to the vendor routing information associated with the application identifier received.

Dependent claims 4-12 recite additional method steps related to the transmission and

1  verification of information, including "user identifiers" and "other user information." Claims 7-12
2  further specify that the information be received "using an unsecure facility."
3      Apple argues that 1) the '799 Patent is invalid as a matter of law under Section 101
4  because it claims an abstract idea, which is ineligible subject matter; and 2) OpenTV fails to allege
5  sufficient facts to state claims for willful infringement of all of the asserted patents. Apple asks
6  this Court to dismiss OpenTV's infringement claims related to the '799 Patent and willful
7  infringement claims as to all five patents.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts do not require "heightened fact pleading of specifics," *Twombly*, 550 U.S. at 570, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 555. The plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

The issue of invalidity under Section 101 presents a question of law. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). In line with the Federal Circuit and several other courts in this district, the Court thus finds that this Motion can be resolved on the pleadings prior to formal claim construction. *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming grant of motion to dismiss prior to formal claim construction); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714, 717 (Fed. Cir. 2014) (same); *Ultramercial*, 772 F.3d at 717 (Mayer, J., concurring) ("[W]hether the claims meet the demands of 35 U.S.C. § 101 is a threshold question, one that must be addressed at the outset of litigation."); *Cogent Med., Inc. v. Elsevier, Inc.*, 2014 WL 4966326, at *3 (N.D. Cal.

Sept. 30, 2014) (granting motion to dismiss prior to formal claim construction); *Open Text S.A. v. Alfresco Software LTD*, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014) (same); *Gametek LLC v. Zynga, Inc.*, 2014 WL 1665090, at *3 (N.D. Cal. Apr. 25, 2014) (granting motion for judgment on the pleadings prior to formal claim construction); *Cardpool, Inc. v. Plastic Jungle, Inc.*, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013) (granting motion to dismiss prior to formal claim construction); *Internet Patents Corp. v. Gen. Auto. Ins. Servs.*, 29 F. Supp. 3d 1264, 1268-69 (N.D. Cal. 2013) (same); *OIP Techs. v. Amazon.com, Inc.*, 2012 WL 3985118, at *5 (N.D. Cal. Sept. 11, 2012) (same).

OpenTV argues that "[t]he standard of proof to establish the invalidity of a patent under 35 U.S.C. § 101 is 'clear and convincing evidence.'" Opp. at 8. But the Federal Circuit has made it clear that "while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus." *Ultramercial,* 772 F.3d at 721 (Mayer, J., concurring) (explaining that "[a]lthough the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned—much less applied—any presumption of eligibility"). Moreover, neither the Supreme Court in *Alice Corp. v. CLS Bank Int'l* (the Supreme Court's most recent decision regarding patentable subject matter), nor the Federal Circuit in cases applying *Alice* to decide section 101 validity issues, have mentioned the "clear and convincing evidence" standard. *Alice Corp.*, 134 S. Ct. 2347 (2014); *Ultramercial*, 772 F.3d 709; *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014); *Cyberfone Sys. v. CNN Interactive Grp., Inc.*, 558 Fed. Appx. 988 (Fed Cir. 2014); *DDR Holdings, LLC*, 773 F.3d 1245.

Accordingly, the Court will apply the Rule 12(b)(6) standard articulated above. The parties have filed their proposed claim constructions and fully briefed any disputes related to the '799 Patent claims. For the purposes of deciding this Motion, the Court adopts OpenTV's proposed construction of the '799 Patent claims and will interpret the claims in the light most favorable to OpenTV.[1]

---

[1] Specifically, the Court will give all of the '799 Patent claim terms their "[p]lain and ordinary meaning," except for the term "unsecure facility," which the Court will construe as "unsecure communication lines." Dkt. 95, Attachment A. Furthermore, the Court will not construe the preambles of claims 1 and 3 as limiting. *Id.*

4

### B. Section 101 Patent-Eligible Subject Matter

Section 101 of the Patent Act describes the types of inventions that are eligible for patent protection. Under Section 101, the scope of patentable subject matter encompasses "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. It is well settled that laws of nature, natural phenomena, and abstract ideas are excluded from the universe of patentable subject matter. *See Alice Corp.*, 134 S. Ct. at 2354. These categories are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Svcs. v. Prometheus Labs.*, 132 S. Ct. 1289, 1293 (2012) (citations omitted). Allowing patent claims for laws of nature, natural phenomena, and abstract ideas would "tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* at 1293. However, the Supreme Court has also recognized the need to "tread carefully in construing this exclusionary principle, lest it swallow all of patent law." *Alice Corp.*, 134 S. Ct. at 2354.

In *Alice*, the Supreme Court articulated the two-part test that courts must use to determine whether a claim's subject matter is patent-eligible. First, a court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp.*, 573 U.S. at 2355. If they are, the Court then "consider[s] the elements of each claim both individually and as an ordered combination" to determine whether the claim contains an "inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law itself." *Id.*

#### i. The '799 Patent Method Claims Are Drawn To An Abstract Idea

Under *Alice*, the Court must first determine whether the '799 Patent claims are directed to a patent-ineligible concept. The Court finds that the '799 Patent claims are directed to the abstract idea of compiling, organizing, and transmitting information, using identification codes as shorthand for that information. *See Content Extraction*, 776 F.3d at 1347 (affirming grant of motion to dismiss and holding that "[t]he concept of data collection, recognition, and storage is undisputedly well-known"); *Cyberfone Sys.*, 558 Fed. Appx. at 992 (holding that the "well-known

concept" of "using categories to organize, store, and transmit information" is not patent-eligible); *Cogent Med.*, 2014 WL 4966326, at *4 (finding that claims were directed to "the abstract idea of maintaining and searching a library of information"). The limitations that such information be confidential, verified, or received via unsecure communications lines do nothing to render the idea concrete or tangible. On their face, the claims—which describe the "broadcasting," "storing," "assembling," "associating," "receiving," and "transmitting" of various identification codes—are directed to an "abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715.

When analyzing whether a claim is directed to an abstract idea, some courts ask whether the claims' steps "can be performed in the human mind, or by a human using a pen and paper." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). The "pen and paper test" confirms that the '790 Patent claims are drawn to an abstract idea. Like the claims at issue in *CyberSource*, claims 3-12 of the '799 Patent describe a method that can be performed entirely in the human mind. *Id.* at 1373. Using a pen, paper, and her own brain, a person could write down a list of products, corresponding product codes, and vendor contact information (step 1), organize those codes by vendor (step 2), receive an order from a user containing a product code and quantity of the product desired (step 3), and transmit that order by matching the product code to the vendor contact information using the aforementioned list (step 4). The fact that method claims 3-12 could be accomplished without modern technology is indicative that they "are the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none," and therefore comprise a non-patent-eligible abstract idea. *Id.* (explaining that "[s]uch a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101") (citation omitted).

OpenTV argues that the pen and paper test does not doom the method claims, because "[a] person having ordinary skill in the art in the mid-1990s readily understood the meaning of claim terms such as 'storing,' 'routing,' and 'transmitting,' as actions that could not be performed using pen and paper" and which "require[d] a computer operation." Opp. at 18. Even accepting OpenTV's premise as true, it is well settled that "a claim directed to an abstract idea does not

6

move into section 101 eligibility territory by 'merely requir[ing] generic computer implementation.'" *buySAFE*, 765 F.3d at 1354 (quoting *Alice Corp.*, 134 S. Ct. at 2357) (affirming grant of motion for judgment on the pleadings). The pen-and-paper test does not require described electronic components to literally exist on paper: instead, it is an analytical tool to test whether the underlying concept described in the claims is abstract, and thus not patent-eligible. *See Planet Bingo, LLC v. CKGS LLC*, 576 Fed. Appx. 1005, 1006-07 (Fed. Cir. 2014) (applying pen and paper test to claims involving "computer-aided . . . systems"); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 2014 WL 4364848, at *2, *10 (E.D. Tex. Sept. 2, 2014) (applying pen and paper test to claims involving a "computer program product").

OpenTV further argues that the '799 Patent is not directed to an abstract idea because it describes "a specific solution to overcome a technological problem that arose in the realm of electronic communications for interactive information systems, such as interactive television." Opp. at 12. At the March 19, 2015 hearing, OpenTV further argued that the '799 Patent describes systems and methods to solve the problem of needing to transfer confidential information over unsecure communication lines in the context of interactive television networks, whether to prevent against the "malicious eavesdropper" or to preserve anonymity. *See* Hearing Tr. at 15-16.

The Court is not persuaded. The problem of how to transmit, receive, store, and organize confidential information deriving from multiple sources is not a creature of the Internet age: solutions to this problem date back to the invention of smoke signals. It is telling that the key step in the claimed invention, the transmission of the specific confidential information, can be accomplished via "mail" or "telephone." '799 Patent 24:22-25:39. It is implausible that a system employing the postal system or human-to-human telephone interaction to accomplish its critical objective is a solution to a uniquely technological problem.

In addition, nowhere do the '799 Patent claims say anything about "malicious eavesdropping" or "interactive information systems." Nor is there a description of how to secure the transmission of information over unsecure communication lines beyond the use of identification codes. Indeed, it is undisputed that the patent does not describe a more secure technology for transferring the information; as noted above, the actual transmission of the

7

1 confidential information occurs via telephone or mail. On their face, then, the claims do not say
2 what OpenTV claims they say. While the specification—from which OpenTV draws much of the
3 language it uses to support its argument that the claims are not drawn to an abstract idea—may be
4 used to provide context for interpretation of the patent claims, "[i]t is a 'bedrock principle' of
5 patent law that 'the claims of a patent define the invention to which the patentee is entitled the
6 right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting
7 *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir.
8 2004)). As claimed, OpenTV's "specific solution" boils down to the use of identification codes to
9 organize and transmit confidential information.

Even construing the claims as OpenTV does, the invention claimed by the '799 Patent is not "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of [television] networks." *DDR Holdings*, 773 F.3d at 1257. Rather, as noted above, the problem of transmitting confidential information using unsecure communication methods has existed for centuries, long before the advent of interactive television networks. The '799 Patent claims are drawn to the abstract idea of using identification codes to solve this age-old problem. *See Planet Bingo*, 576 Fed. Appx. at 1008 (holding that claims were directed to the abstract idea of preventing "tampering problem[s]" and "other security risks" during commercial transactions).

    **ii.**  **The '799 Patent Method Claims Do Not Contain An Inventive Concept**

The second prong of the *Alice* test requires the Court to examine the claims of the '799 Patent, both individually and as an ordered combination, to determine whether they include an "inventive concept." OpenTV argues that the '799 Patent method claims contain an inventive concept because they "describe[] a specific method that can be performed by a single entity and [are] directed to solving a specific technological problem" in that they "provide[] a method that may be used to route user data using certain identifiers over an unsecure communications channel in an interactive information system." Opp. at 15. OpenTV goes on to summarize the dependent method claims without identifying any specific inventive concept embodied by those claims, whether taken individually or as an ordered combination. *See id.* at 15-16.

The Court finds that the claims do not contain the required inventive concept to save the '799 Patent from ineligibility under Section 101. The limitations that the information exchanged be confidential, that the information be transmitted in part using unsecure communication lines, or that the information be verified in some fashion, do not constitute elements "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Mayo*, 132 S. Ct. at 1294.

Application of the machine-or-transformation test, which courts consider when conducting the second prong of the *Alice* analysis, confirms this conclusion. While the machine-or-transformation test is not dispositive, it remains "a useful and important clue." *Bilski v. Kappos*, 561 U.S. at 604 (2009). The '799 Patent method claims generally describe the organization and exchange of intangible information; they do not "transform a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008); *see also CyberSource Corp.*, 654 F.3d at 1370 ("The mere collection and organization of data . . . is insufficient to meet the transformation prong of the test."). In *Diamond v. Diehr*, on the other hand (a case on which OpenTV relies), the Supreme Court found it clear that the claimed invention involved the transformation of a physical article into a different state or thing and based its holding that the patent was directed to eligible subject matter in large part on that fact. 450 U.S. at 184, 192-93. As for the machine prong, "nowhere does the ['799 Patent] tie the claims at issue to a novel machine." *Ultramercial*, 772 F.3d at 717.

OpenTV does not address the machine-or-transformation test. Instead, OpenTV urges the Court to look past the conclusion that flows from the application of that test and instead analogize the '799 Patent to the patent at issue in *DDR*. *See* Opp. at 12. But that case is readily distinguishable. The *DDR* patent was directed to the problem of how to retain website visitors who clicked on links to third-party advertisements. *DDR Holdings*, 773 F.3d at 1257. In the absence of the patented invention, the "routine, conventional functioning of Internet hyperlink protocol" would automatically transport visitors away from the host's website. *Id.* To solve this problem, the patented invention claimed a method for creating a "hybrid" web page that combined the visual "look and feel" of the host website with the information sought by the user from the

9

third-party website. *Id.* The Court held that, "taken together as an ordered combination," the claims at issue "specify how interactions with the Internet are manipulated to yield a desired result . . . that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink" and therefore "recite an invention that is not merely the routine or conventional use of the Internet." *Id.* at 1258-59. The issue of retaining website visitors obviously did not arise until the creation of the Internet and hyperlink protocol. The patented solution was thus directly tied to a specific technological challenge.

Here, as described more fully above in the Court's analysis of the first prong of the *Alice* test, the '799 Patent does not claim a solution to a problem that arose uniquely in the context of interactive television networks. Furthermore, the '799 Patent claims recite a method that does not go beyond the "routine or conventional use" of existing electronic components. The '799 Patent does not manipulate the mechanism by which information is transmitted via an interactive network; instead, the method claims merely describe the use of identifiers to code confidential information and the transmission of those identifiers using "routine" and "conventional" methods.

Finally, OpenTV's argument that the original assignee of the '799 Patent "was the first to provide this inventive combination and is credited as the provider of the first interactive television service" does not change the Court's analysis. Opp. at 14. As a threshold matter, the Court will not consider evidence submitted by OpenTV outside of the TAC. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Furthermore, the fact that a company may be the first to successfully apply an abstract idea within a new technological context does not transform the abstract idea into something tangible and patentable. *See Bilski v. Kappos*, 561 U.S. 593, 610-611 (2010). While this type of argument may be relevant to a novelty or obviousness analysis, it has no place in an analysis of the patentability of the subject matter to which the claims are directed. *See Diamond v. Diehr*, 450 U.S. 175, 189-91 (1981) (distinguishing patent-eligibility under § 101 from novelty and obviousness under §§ 102 and 103); *Cogent Med., Inc.*, 2014 WL 4966326, at *4 & n.3 (explaining that "[i]t is important to distinguish novelty and obviousness from the 'inventive feature' analysis required by the Supreme Court in *Alice*").

OpenTV is unable to identify any inventive concept contained in the '799 Patent method

claims, as is the Court. The method claims therefore fail both prongs of the *Alice* test.

### iii. The '799 Patent System Claims Fall With the Method Claims

The '799 Patent system claims fall along with the method claims. Claims 1-2 "add nothing of substance to the underlying abstract idea" to which method claims 3-12 are directed. *Alice Corp.*, 134 S. Ct. at 2360. Indeed, the "system claims are simply the method claims implemented on a system for performing the method." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1342 (Fed. Cir. 2013). OpenTV argues that the system claims describe "specific, concrete, physical components" and specific details regarding the interaction of those components. Opp. at 14. But reciting hardware elements like "Provider Component," "Reception Component," and "Response Collector Component" does not render the method applied by the system any less abstract, particularly after consideration of the descriptions of these components in the specification. *See* '799 Patent 5:38-7:51 (describing "conventional broadcast signal," "conventional personal computer system," "television system," and "conventional television broadcast transmitter" as embodiments of the elements of the Provider Component); 7:52-10:42 (describing "conventional television receiver," "conventional television broadcast tuner," "conventional modem," "conventional flash memory," and "conventional infrared command encoder" as embodiments of the elements of the Reception Component); 24:22-25:39 (stating that the Response Collector Component may forward user information via "mail" or "telephone").

To contain an inventive concept, the system technology must do more than perform "well-understood, routine, and conventional activities commonly used in industry." *Content Extraction*, 776 F.3d at 1348. The '799 Patent system claim components are described solely in terms of their functions, and the "broadcasting," "receiving," "storing," "assembling," "associating," and "transmitting" functions performed by those components boil down to electronic communication and recordkeeping, two of the "most basic functions of" generic computer technology. *See Alice Corp.*, 134 S. Ct. at 2359. Because the system claims employ "purely functional and generic" components for "performing the basic calculation, storage, and transmission functions required by the method claims," they also are patent-ineligible under Section 101. *Id.* at 2360.

In summary, the only plausible reading of the '799 Patent method and system claims is that

they are directed to patent-ineligible subject matter, do not contain an inventive concept, and are therefore invalid under Section 101. On their face, OpenTV's claims do not sufficiently limit the abstract idea to which they are drawn, leading to the exact "risk [of] disproportionately tying up the use of the underlying ideas" that *Alice* warns against. *Alice Corp.*, 134 S.Ct. at 2354-55 (internal quotations omitted).

### C. Willful Infringement

Section 284 of the Patent Code permits a court to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. A finding of willful infringement is a prerequisite to the award of enhanced damages under Section 284. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007). To state a claim for willful infringement, the plaintiff must plead that the defendant acted with knowledge of the patent and of his alleged infringement, or equivalent facts. *Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005) (citing *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)).

Case law in this district diverges on the question of whether claims for willful infringement may be based on knowledge inferred solely from the filing of the complaint. In *Vasudevan Software, Inc. v. TIBCO Software Inc.*, the court dismissed plaintiff's claim for willful infringement based on a bare allegation of post-filing conduct because not doing so "would invite claims of willfulness in every patent suit." 2012 WL 1831543, at *5 (N.D. Cal. May 18, 2012). More recently, another court denied a motion to dismiss claims for willful infringement based in part on post-filing conduct. *Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882, 887-88 (N.D. Cal. 2014). Noting that "the fact that the plaintiff has not sought a preliminary injunction weighs strongly against awarding damages for post-filing willful infringement," the court nevertheless held that it was "inappropriate to resolve the issue of damages at the motion to dismiss stage" because other factors may impact the determination of enhanced damages, "including the developing course of the present litigation." *Id.*; *see also MyMedicalRecords, Inc. v. Jardogs, LLC*, 1 F. Supp. 3d 1020, 1026 (C.D. Cal. 2014) (denying motion to dismiss willful infringement claims based solely on post-filing conduct because invalidating such claims as a matter of law would "give defendant free reign to willfully infringe a patent of which it is now

blatantly aware simply because a plaintiff chose not to move for a preliminary injunction" and "[s]uch a result would eviscerate the whole basis behind enhanced damages for willful infringement").

OpenTV alleges that Apple's infringement of the asserted patents was "willful and deliberate." TAC ¶¶ 70, 79, 89, 99. The Court finds that OpenTV has not stated a claim for willful infringement based on prefiling conduct in relation to the '287, '586, or '229 patents.[2] OpenTV alleges only that Apple "had knowledge [of the '287, '586, and '229 patents] prior to the filing of Plaintiffs' Complaint for Patent Infringement by virtue of [OpenTV's parent company's] role in the market and the impact of [OpenTV's parent company's] portfolio on Apple's products." TAC ¶¶ 79, 89, 99. This allegation is based only on OpenTV's separate allegation that Apple "would be aware of a prominent portfolio such as that of [OpenTV's parent company]." TAC ¶¶ 77, 86, 96. The Court finds that these allegations are not sufficient to support a claim for willful infringement. The Court cannot infer knowledge of particular patents from knowledge of the existence of a company's *entire portfolio* of patents. *See Vasudevan Software*, 2012 WL 1831543, at *3 ("The requisite knowledge of the patent allegedly infringed simply cannot be inferred from mere knowledge of other patents, even if somewhat similar."). The Court also finds that OpenTV's allegation that Apple would have actual knowledge of the patents based on litigation or a license between OpenTV and a third party is insufficient to support the willful infringement claims. *See* TAC ¶¶ 77, 86, 96.

In contrast, the Court finds that OpenTV has stated a claim for willful infringement based on prefiling conduct in relation to the '033 Patent. *See* TAC ¶ 68 ("Apple has knowledge of the '033 Patent at least since this patent was identified to Apple during prosecution of [patents assigned to Apple].").

OpenTV's allegations of willful infringement based on postfiling conduct remain for the '287, '586, and '229 patents. The Court agrees with the reasoning in *Potter Voice Technologies* and finds that it is not appropriate to resolve these claims at the motion to dismiss stage. Plaintiffs

---

[2] Because all of OpenTV's infringement claims as to the '799 Patent are dismissed, the Court does not analyze OpenTV's claims for willful infringement of the '799 Patent.

have alleged the required knowledge of the patents and infringement.  *See, e.g.*, TAC ¶ 77 ("Apple has had knowledge and notice of the '287 Patent and Apple's infringement of the '287 Patent since at least the filing and service of the original, First Amended, Second Amended, and Third Amended Complaints and despite this knowledge continues to infringe.").  Accordingly, the Court denies Apple's Motion to Dismiss OpenTV's willful infringement claims.

### III.     CONCLUSION

For the foregoing reasons, OpenTV's claims of infringement of the '799 Patent are DISMISSED WITH PREJUDICE.  Apple's Motion to Dismiss the TAC is DENIED as to all claims of willful infringement.

**IT IS SO ORDERED.**

Dated: April 6, 2015

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge